[Civ. No. 70061. Second Dist., Div. Three. Feb. 28, 1984.]

STEVEN SHAPIRO, Plaintiff and Appellant, v.
WELLS FARGO REALTY ADVISORS, Defendant and Respondent.

468

470

**COUNSEL**

Herbert L. Michel, Jr., for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Gregory H. Link, John J. Wasilczyk and Johnny Darnell Griggs for Defendant and Respondent.

**OPINION**

**ARABIAN, J.**—Plaintiff and appellant, Steven Shapiro (Shapiro), appeals from an order dismissing his first amended complaint against defendant and respondent, Wells Fargo Realty Advisors (Wells Fargo), after Wells Fargo's demurrer was sustained as to all causes of action and, at Shapiro's request, was sustained without leave to amend. We affirm the dismissal.

## FACTS

Shapiro was employed by Wells Fargo as its treasurer and vice president from March 1, 1978, until his discharge, approximately three and one-half years later, on September 25, 1981. Based on this termination, he filed a complaint against his former employer. When Wells Fargo filed its first demurrer, motion to strike, and request for judicial notice, Shapiro voluntarily amended his complaint. The first amended complaint, filed on December 29, 1982, contains three causes of action.

In his first cause of action Shapiro alleges that Wells Fargo breached an implied-in-fact contract by refusing to allow him to continue his employment, even though he was performing satisfactorily. Shapiro alleges that he was advised, orally by supervisors and in writing through benefit brochures, that he would have an opportunity to achieve the maximum level of base pay and that he would not be terminated without good cause.

In the second cause of action, which requests punitive damages, Shapiro alleges that his termination was wrongful and malicious because Wells Fargo knew that an at-will employee could not be terminated except for good cause.

In his third cause of action for breach of the implied covenant of good faith and fair dealing, Shapiro alleges that Wells Fargo denied him the opportunity to obtain optimum employment benefits. He claims that Wells Fargo made false representations that he would not be terminated without good cause. Thus, Wells Fargo did not act in good faith and did not deal fairly with him when it entered into written benefit contracts and when he was terminated while performing satisfactorily. Shapiro requested punitive damages for wilful concealment of fraudulent representations and intentional denial of the opportunity to obtain maximum benefits.

Wells Fargo filed another demurrer and motion to strike in response to Shapiro's amended complaint, and a request for judicial notice of a Wells Fargo stock option agreement. The stock option agreement, signed by Shapiro on April 22, 1979, one year after he was hired, expressly defines the relationship between Shapiro and Wells Fargo as employment-at-will.[1]

---

[1]The stock option agreement, in section 2.3 entitled "Consideration To Trust," states: "In consideration of the granting of the Option by the Trust the Employee agrees to render faithful and efficient services to the Trust or Advisor, with such duties and responsibilities as the Trust shall from time to time prescribed, for a period of at least one (1) year from the date this Option is granted. *Nothing in this Stock Option Agreement or in the Plan shall confer upon the Employee any right to continue in the employ of the Trust or the Advisor or shall interfere with or restrict in any way the rights of the Trust or the Advisor, which are hereby expressly reserved, to discharge the Employee at any time for any reason whatsoever, with or without good cause.*" (Italics added.)

On March 18, 1983, the trial court sustained Wells Fargo's demurrer as to all causes of action. At Shapiro's request, the demurrer was sustained without leave to amend to enable him to file this appeal.

ISSUE

The questions presented by this appeal are whether an at-will employee, who is discharged without cause by his employer, can maintain actions for (a) wrongful termination in violation of public policy, (b) breach of an implied covenant of good faith and fair dealing, or (c) breach of an implied-in-fact contract, without alleging facts which state a recognized exception to Labor Code section 2922.[2]

DISCUSSION

█ Based on Shapiro's decision not to amend his complaint and his request to the trial court that the demurrer be sustained without leave to amend, we presume that Shapiro has stated his case "as strongly as it can be stated, and all ambiguities and uncertainties will be resolved against [him]." (*Archibald* v. *Cinerama Hawaiian Hotels, Inc.* (1977) 73 Cal.App.3d 152, 156 [140 Cal.Rptr. 599]; *Sierra Investment Corp.* v. *County of Sacramento* (1967) 252 Cal.App.2d 339, 341 [60 Cal.Rptr. 519].) Where the lower court sustains the defendant's demurrer and plaintiff declines to amend, electing to stand on his complaint, the judgment of dismissal must be affirmed if the complaint is objectionable on any ground raised by the demurrer. (*Gonzalez* v. *State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681]; see *Cal Francisco Inv. Corp.* v. *Vrionis* (1971) 14 Cal.App.3d 318, 321 [92 Cal.Rptr. 201].)

I.

*Shapiro is an at-will employee.*

█ Shapiro's complaint does not allege the existence of an employment contract, but defines his position as an at-will employee. A provision within the stock option agreement expressly reserves Wells Fargo's right "to discharge [Shapiro] at any time for any reason whatsoever, with or without good cause." By signing this contract, Shapiro agreed to continue to perform services for one year, in exchange for an option to purchase stock.

---

[2]Labor Code section 2922 provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month."

██ The agreement expressly stated that it did not grant Shapiro "any right to continue" in his employment.[3]

██ "Under traditional common law rule, codified in Labor Code section 2922, an employment contract of indefinite duration is in general terminable at 'the will' of either party. Over the past several decades, however, judicial authorities in California and throughout the United States have established the rule that under both common law and the statute an employer does not enjoy an absolute or totally unfettered right to discharge even an at-will employee. In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an expressed statutory objective or undermined a firmly established principle of public policy, courts have recognized that an employer's traditionally broad authority to discharge an at-will employee 'may be limited by statute . . . or by considerations of public policy.' [Citations.]" (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].)

"The absolute power conferred by Labor Code section 2922 on an employer to discharge the at-will employee without cause is founded on the contractual concept of mutuality of obligation. The reasoning is that, since the employee may terminate the employment relationship when he wishes to do so, the employer also is entitled to terminate the relationship at his pleasure. However, when viewed in the context of present-day economic reality and the joint, reasonable expectations of employers and employees, the 'freedom' bestowed by the rule of law on the employee may indeed be fictional." (*Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 448-449 [168 Cal.Rptr. 722].)

II.

*The complaint does not state a cause of action for wrongful discharge.*

██ A series of recent California cases have limited the application of Labor Code section 2922.[4] Three distinct theories have been developed: (1)

---

[3]Since Shapiro failed to object to the trial court's decision to take "judicial notice" of the stock option agreement, we will test this nonstatutory speaking motion as a motion for summary judgment. (*Vesley* v. *Sager* (1971) 5 Cal.3d 153, 157, 167-168, fn. 7 [95 Cal.Rptr. 623, 486 P.2d 151]; see *Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 657 [135 Cal.Rptr. 75, 557 P.2d 507]; *Mediterranean Exports, Inc.* v. *Superior Court* (1981) 119 Cal.App.3d 605, 615 [174 Cal.Rptr. 169]; *McKinney* v. *County of Santa Clara* (1980) 110 Cal.App.3d 787, 793 [168 Cal.Rptr. 89]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleadings, § 856, p. 2459.)

[4]Several commentators have discussed these recent decisions. (See Miller & Estes, *Recent Judicial Limitations on the Right to Discharge: A California Trilogy* (1982) 16 U.C. Davis L.Rev. 65; Note, *Defining Public Policy Torts in At-Will Dismissals* (1981) 34 Stan.L.Rev. 153.)

a tort cause of action for wrongful discharge in violation of public policy (*Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167); (2) a cause of action for employer's breach of the implied covenant of good faith and fair dealing, which sounds both in tort and contract (*Cleary* v. *American Airlines, Inc., supra,* 111 Cal.App.3d 443); and (3) a cause of action for employer's breach of an implied-in-fact covenant to terminate only for good cause (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917]). Shapiro's complaint attempts to state a cause of action under each of these theories.

### A. Public Policy.

■ The Supreme Court in *Tameny,* held that an employee discharged for refusing to engage in illegal conduct at his employer's request may bring a tort action for wrongful discharge. (27 Cal.3d at p. 178.) In *Tameny,* the plaintiff alleged that his former employer had discharged him after 15 years of service because he refused to participate in an illegal scheme to fix retail gasoline prices. (*Id.,* at p. 169.) The Supreme Court found that the trial court erred in sustaining defendant's demurrer to the tort cause of action for wrongful discharge. (*Id.,* at p. 179.)

The *Tameny* court held that an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend on any express or implied promises set forth in the employment contract, but rather reflects a duty imposed by law on all employers in order to implement the fundamental public policy embodied in the penal statutes. (*Id.,* at p. 176.) The *Tameny* court found it unnecessary to determine whether a tort recovery would also be available on the theory that the discharge constituted a breach of the implied-in-law covenant of good faith and fair dealing inherent in every contract. (*Id.,* at p. 179, fn. 12.) ■ Thus, " 'where the employer's motivation for [a] discharge contravenes some *substantial* public policy principle, then the employer may be held liable to the employee for damages . . . .' [Citation.]" (*Id.,* at p. 177, italics added.) *Tameny* set the framework for other cases seeking to limit the application of Labor Code section 2922.

In *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 293 [188 Cal.Rptr. 159], plaintiff alleged in his complaint that his termination from employment was a result of his efforts to obtain a reasonably smoke-free work environment. The court held that his complaint was sufficient to state a cause of action for the tort of wrongful discharge based on retaliatory dismissal. (*Id.,* at p. 304.) ■ The *Hentzel* court found "that an employee is protected against discharge or discrimination for complaining in good faith about working conditions or practices which he reasonably believes to be unsafe,

whether or not there exists at the time of the complaint an [Occupational Safety and Health Act] standard or order which is being violated." (*Id.*, at pp. 299-300.) This employee right exists because the "safety of employees in the work place has long been a matter of prime legislative concern" resulting in numerous statutes which protect employee safety and health. (*Id.*, at p. 297; Lab. Code, § 6300 et seq.)

In the case before us, Shapiro has failed to allege that he was terminated either in retaliation for asserting his statutory rights, or for his refusal to perform an illegal act at the request of his employer, or because his employer directly violated a statute by dismissing him. Shapiro's second cause of action alleges only that he was terminated without good cause and was wrongfully denied the opportunity to obtain optimum benefits by working additional years. The complaint does not set forth any facts which show that his "employer's motivation for discharge contravened some *substantial public policy principle*. . . ." (*Tameny* v. *Atlantic Richfield Co.*, supra, 27 Cal.3d at p. 177, italics added.)

Shapiro urges that it is the public policy of California to promote job security and stability in the community, and that Wells Fargo violated this "public policy" in dismissing Shapiro without cause.[5] Although there is dictum in *Tameny* suggesting that there can be a public policy sufficient to support a cause of action for wrongful discharge absent statutory authority, no California cases have so held; however, one Court of Appeal case has expressly stated that courts have no power to declare public policy in wrongful discharge cases without statutory support. (See *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390 [6 Cal.Rptr. 171.].)

We find that Shapiro has failed to establish that Wells Fargo's motive for his discharge was wrongful either because it was in direct violation of a statute or in contravention of public policy. Therefore, the trial court correctly dismissed Shapiro's cause of action for wrongful discharge based on those grounds.

### B. Implied covenant of good faith.

Several months after the *Tameny* decision, the Court of Appeal decided *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168

---

[5]The trial court stated in a minute order dated March 18, 1983: "Labor Code 2922 provides that employment at will is terminable at will by notice. The modifications of that statute by case law are generally based upon public policy or estoppel (*Pugh* case). The plaintiff's argument that public policy favors full employment and disfavors discharge at will is not a tenable one. Nothing is set out in the pleading, which is filled with conclusory statements, to establish that Wells Fargo acted contrary to public policy. Termination at will is not, in itself, a violation of public policy."

Cal.Rptr. 722], which established a cause of action for wrongful discharge based upon breach of an implied covenant of good faith and fair dealing. (*Id.,* at p. 453.) In *Cleary,* an employee who had worked for an airline for eighteen years brought an action against his employer seeking damages for wrongful discharge from employment. Cleary alleged that he was discharged for engaging in union organizing activities and that he was not afforded a hearing as required by the employer's regulations. The trial court sustained defendant's demurrer without leave to amend and entered a judgment of dismissal. (*Id.,* at p. 446.)

The Court of Appeal reversed and held that the longevity of plaintiff's service, together with the expressed policy of the employer in providing specific procedures for adjudicating employee disputes, operated as a form of estoppel, precluding plaintiff's discharge without good cause. (*Id.,* at p. 455.) The court also held that Cleary's allegation that he was discharged due to his union organizing activities pleaded one of the recognized public policy exceptions to the rule of Labor Code section 2922. (*Ibid.*)

 Shapiro has failed to allege facts under either of the two factors specified in *Cleary.* The first factor—longevity of employment—is not shown because Shapiro was only employed for three and one-half years. Secondly, no facts are alleged which indicate that Wells Fargo failed to follow its own express policy and procedures for adjudicating employee disputes. Shapiro urges that longevity of service by the employee is only one factor to be considered. Although his assertion is correct, he fails to allege facts sufficient to support a cause of action under either of the factors set forth in *Cleary.* The *Cleary* court stated that plaintiff has the burden of proving that he was terminated unjustly. (*Id.,* at p. 456.) Shapiro did not sustain this burden.

Although *Cleary* states that there is "an implied covenant of good faith and fair dealing in *every* contract" (*id.,* at p. 453), the law with regard to the tort of bad faith breach of contract is well developed only in the insurance field.[6] The first noninsurance case which considered extending the tort of bad faith breach of contract was *Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135 [145 Cal.Rptr. 623]. The *Sawyer* court stated that

---

[6]The pioneering cases, *Comunale* v. *Traders & General Insurance Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A. L. R. 2d 883], and *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], have been followed by noteworthy bad faith tort cases including: *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141]; *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329]; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]; and *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].

the breach of an implied covenant of good faith and fair dealing consists of bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the obligee's enjoyment of contract rights. (*Id.*, at p. 139.)[7]

Shapiro has not alleged facts sufficient to show a bad faith act by Wells Fargo which was extraneous to the employment relationship and which was intended to frustrate his enjoyment of contractual rights. Shapiro has only alleged in broad and conclusory fashion that Wells Fargo represented that he would not be terminated without good cause and would not be discharged in violation either of statute or public policy; that these representations were false and wilfully concealed; and that he relied on these representations to his detriment. Although he alleged that it was Wells Fargo's policy not to allow otherwise qualified workers to continue employment, so they would be unable to obtain optimum benefits, he fails to allege any facts to support this allegation or to show a pattern of unjust terminations.

Further, Shapiro has not alleged facts sufficient to state a cause of action for fraudulent misrepresentation. "No specific facts were pleaded to show how, when, where, to whom, and by what means the representations were tendered, from what data the falsity of [employer's] intentions could be inferred, or how, when, where, through whom, and in what circumstances [employee] became justified in relying upon these representations." (*Hills Trans Co.* v. *Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 707 [72 Cal.Rptr. 441].)

We conclude that Shapiro has not alleged facts sufficient to support a cause of action for breach of the implied covenant of good faith and fair dealing under the standards set forth in *Cleary* nor under the definition set forth in *Sawyer*.

### C. Implied-in-fact promise.

In a case which was factually similar to *Cleary*, the Court of Appeal in *Pugh* v. *See's Candies, Inc., supra*, 116 Cal.App.3d 311, rejected the theory of breach of the implied covenant of good faith and fair dealing and applied traditional contract theory. The *Pugh* court stated: "In *Cleary* the

---

[7]Several commentators have recently reviewed this developing and confusing area of the law. (See Loudenback & Jurika, *Standards for Limiting the Tort of Bad Faith Breach of Contract* (1982) 16 U.S.F. L.Rev. 187; Note, *The Covenant of Good Faith and Fair Dealing: a Common Ground for the Torts of Wrongful Discharge from Employment* (1981) 21 Santa Clara L.Rev. 1111; Diamond, *The Tort of Bad Faith Breach of Contract: When, If at all, Should it be Extended Beyond Insurance Transactions* (1981) 64 Marq.L.Rev. 425.)

court did not base its holding on the covenant of good faith and fair dealing alone. Its decision rested upon the employer's acceptance of responsibility for refraining from arbitrary conduct, as evidenced by its adoption of specific procedures for adjudicating employee grievances. While the court characterized the employer's conduct as constituting '[recognition of] its responsibility to engage in good faith and fair dealing' [citation] the result is equally explicable in traditional contract terms: the employer's conduct gave rise to an *implied promise* that it would not act arbitrarily in dealing with its employees." (*Id.*, at p. 329, italics added, fn. omitted.)

In *Pugh,* a vice president and member of the board of directors,[8] who had been employed by See's Candies for 32 years, brought an action against his former employer. He alleged that his firing was a breach of contract and was for reasons which offended public policy. At a trial before a jury, on conclusion of Pugh's case-in-chief, the trial court granted defendant's motion for nonsuit. (*Id.*, at p. 315.) The Court of Appeal reversed because there were facts in evidence from which a jury could determine the existence of an implied promise that Pugh would be terminated only for good cause. (*Id.*, at p. 329.)[9]

■ The court held that "'contracts of employment in California are terminable only for good cause if *either* of two conditions exist: (1) the contract was supported by consideration independent of the services to be performed by the employee for his prospective employer; or (2) the parties agreed, expressly or impliedly, that the employee could be terminated only for good cause.'" (*Id.*, at p. 326; *Rabago-Alvarez* v. *Dart Industries, Inc.* (1967) 55 Cal.App.3d 91, 96 [127 Cal.Rptr. 222].)

■ The *Pugh* court also stated "'[i]t is fundamental that when construing contracts involving substantial employment rights, courts should avoid mechanical and arbitrary tests if at all possible; employment contracts, like other agreements, should be construed to give effect to the intention of the parties as demonstrated by the language used, the purpose to be accomplished and the circumstances under which the agreement was made. [Citations.] . . . ■ [A] *contract for permanent employment, whether or not it is based upon some consideration other than the employee's services, cannot be terminated at the will of the employer if it contains an express or implied condition to the contrary.*'" (116 Cal.App.3d at p. 326, italics in

---

[8]The *Pugh* court stated that when "the employee occupies a sensitive managerial or confidential position, the employer must of necessity be allowed substantial scope for the exercise of subjective judgment." (116 Cal.App.3d at p. 330.)

[9]The *Pugh* court also held that plaintiff's evidence failed to establish that his termination violated public policy. (116 Cal.App.3d at p. 324.)

original; *Drzewiecki* v. *H. & R. Block, Inc.* (1972) 24 Cal.App.3d 695, 703-704 [101 Cal.Rptr. 169].)

■ "The presumption that an employment contract is intended to be terminable at will is subject, like any presumption, to contrary evidence. This may take the form of an agreement, express or implied, that the relationship will continue for some fixed period of time. . . . [I]t may take the form of an agreement that the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some 'cause' for termination." (*Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at pp. 324-325, fn. omitted.)

■ According to *Pugh,* as a first step the court must determine whether plaintiff can rebut the presumption of "at-will" status by showing an implied term of the contract to the contrary. If this presumption is rebutted, then the second step is for the jury to consider factors which would show an implied promise to be terminated only for good cause. The factors which the jury should consider include: the duration of plaintiff's employment, the commendations and promotions he received, the apparent lack of any direct criticism of his work, the assurances he was given that if he was loyal and did a good job his future would be secure, and the employer's practice of not terminating administrative personnel except for good cause. An agreement to terminate only for good cause may be shown by the acts and conduct of the parties, interpreted in the light of the foregoing factors and surrounding circumstances. (*Id.,* at p. 329.)

In *Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896 [185 Cal.Rptr. 617], the plaintiff was able to rebut the presumption that she was an "at-will" employee. Walker, a head nurse, who had been employed by a district hospital for 15 years, was summarily discharged from her position. She brought suit alleging she was wrongfully discharged without cause and without a pretermination hearing. The trial court concluded as a matter of *fact* that the discharge was for cause and granted hospital's motion for a directed verdict. The Court of Appeal reversed, holding that the trial court erred in resolving an evidentiary conflict as a matter of fact, since it could be inferred from Walker's evidence that the hospital did not have cause to fire her. (*Id.,* at pp. 898-900.) Further, the *Walker* court also held the hospital was not entitled to a directed verdict because it could not be concluded, as a matter of law, that plaintiff was subject to discharge without procedural protection, where such protection was provided by applicable provisions of the employment handbook. (*Id.,* at p. 905.) Thus, the existence of these written employment policies allowed

Walker to overcome the presumption that she was an employee-at-will. (*Id.*, at pp. 902-904.)

 Shapiro contends that in order to determine if there was an implied promise by Wells Fargo to discharge him only for good cause, the factors presented in *Pugh* must be considered only by the trier of fact and no determination can be made as a matter of law. We find no merit in this contention because Shapiro cannot rebut his status as an at-will employee. The facts presented in this case are different from *Pugh* and *Walker*. In those cases there was no contract which expressly defined the employment relationship. Here, the stock option agreement, signed by Shapiro, stated that it did not confer a right to continued employment on him and did not restrict Wells Fargo's right to discharge him at any time for any reason, with or without good cause. Therefore, the agreement defined the relationship as employment-at-will.[10]

There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results. (*Wal-Noon Corp.* v. *Hill* (1975) 45 Cal.App.3d 605, 613 [119 Cal.Rptr. 646]; see also *Crossen* v. *Foremost-McKesson, Inc.* (N.D.Cal. 1982) 537 F.Supp. 1076, 1077 and *Crain* v. *Burroughs Corp.* (C. D.Cal. 1983) 560 F.Supp. 849, 852, applying this concept to wrongful termination cases.) Therefore, Shapiro's allegations of an implied-in-fact contract for continuing employment and benefits cannot rebut his status as an at-will employee.

Moreover, Shapiro merely alleges that Wells Fargo "implied" he would not be terminated without good cause and that he would have an opportunity to achieve maximum base pay. In *Hentzel* v. *Singer Co.*, *supra,* 138 Cal.App.3d at page 304, the court found that such conclusory allegations, which state few, if any, facts, were insufficient to support a cause of action for breach of implied-in-fact contract. In the case at bench, not only are Shapiro's allegations conclusory, but he could not have reasonably relied on any implied promise by Wells Fargo which contradicted the express provisions of the written stock option agreement which he signed.

In light of express contractual provisions to the contrary, Shapiro has not stated a cause of action for breach of an implied-in-fact promise of continued employment and benefits. In short, as a matter of law, he is unable to rebut the presumption of his "at-will" status.

---

[10]We reject Shapiro's claim that the stock option agreement is an unlawful contract of adhesion. Further, the provision in the stock option agreement granting Wells Fargo the right to terminate an employee at will does not grant it the right to terminate an employee in violation of law. The provision merely expresses the intention of the contracting parties and defines their employment relationship.

### III.

*Shapiro was not denied due process.*

 We find no merit to Shapiro's contention that the application of section 2922 of the Labor Code by the trial court is an unconstitutional denial of his property interest in continuing employment.

 " 'Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " (*Skelley* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774], quoting *Board of Regents* v. *Roth* (1972) 408 U. S. 564, 577, [33 L.Ed.2d 548, 561, 92 S.Ct. 2701]; see also *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717, 722-723 [139 Cal.Rptr. 627, 566 P.2d 261], cert. den. (1978) 434 U.S. 1040 [54 L.Ed.2d 790, 98 S.Ct. 782].)

 Shapiro has not identified any California statute or rule to support his claim that he is entitled to continued employment (*Barthuli* v. *Board of Trustees, supra,* 19 Cal.3d at pp. 722-723), nor any employment regulation which expressly grants the right to a hearing before dismissal (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 450-451 [129 Cal.Rptr. 216]), nor any "mutually explicit understandings" (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 601 [33 L.Ed.2d 570, 580, 92 S.Ct. 2694, 2699]) to support his contention that he was unconstitutionally denied his property right to continued employment.

### CONCLUSION

We find, as a matter of law, that Shapiro has failed to state any cause of action against his former employer, Wells Fargo.

The judgment of dismissal is affirmed.

Klein, P. J., and Lui, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1984. Bird, C. J., was of the opinion that the petition should be granted.