[No. B006825. Second Dist., Div. Three. Jan. 28, 1985.]

TYCO INDUSTRIES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ALAN RICHARDS, Real Party in Interest.

## COUNSEL

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Jeffrey A. Charlston and Peter C. Rosenbloom for Petitioner.

No appearance for Respondent.

Sylvia T. Whitmore for Real Party in Interest.

Joseph Posner as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**KLEIN, P. J.**—Tyco Industries, Inc. (Tyco), a corporation, petitioned this court for a writ of mandate seeking relief from the trial court's overruling of Tyco's demurrer to the causes of action pleaded by real party in interest Alan Richards (Richards).

Because Richards failed to state a cause of action for either violation of Labor Code section 970 (section 970) or wrongful discharge, the trial court abused its discretion in overruling Tyco's demurrer; therefore, we grant the petition for peremptory writ of mandate.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

In December 1979, Richards was employed by Tyco, a toy manufacturer, as a sales representative for its Illinois territory based in Chicago.

In September 1980, Tyco proposed to Richards a relocation to California because Tyco was pleased with Richards' performance and was considering

---

[1]The facts are gleaned from the pleadings and the briefs supporting and opposing the petition.

him for advancement. Tyco told Richards of company plans to convert from an independent-sales-representation form of doing business to factory-employed personnel, and if Richards would consider relocation, a promotion might be forthcoming.

In October 1981, Richards accepted Tyco's offer to become west coast regional manager for the purpose of supervising current sales and later reorganization. The offer included a $12,000 per year raise, and a "$10,000" bonus to cover relocation expenses. Richards discussed with Tyco the "erratic history of sales" in California and questioned whether the move would be good for him. After receiving assurances that Tyco expected long-term development and that it considered him the only suitable person for the job, Richards accepted.

Richards sold his $85,000 home in Illinois and bought one in California for $120,000.

Within a month after Richards began performing his duties, his managerial function was usurped by a Chicago sales supervisor. In answer to his complaint in this regard, he was told to just concentrate on selling.

Richards continued to perform his sales duties for Tyco without incident or criticism until the date of his discharge on September 19, 1982. The reason given by Tyco was that the projected changeover had not turned out to be economically feasible.

On October 11, 1983, Richards filed a first amended complaint, alleging as causes of action, inter alia, violation of section 970 and wrongful discharge. Tyco demurred, claiming the complaint failed to state facts sufficient to constitute any cause of action. The trial court sustained the demurrer with leave to amend.

On March 8, 1984, Richards filed a second amended complaint to which Tyco again demurred to each and every cause of action.

The trial court sustained Tyco's demurrer to causes of action charging breach of covenant of good faith and fair dealing and intentional infliction of emotional distress. It overruled Tyco's demurrer to the causes of action for violation of section 970 and for wrongful discharge.

Tyco filed a petition for a writ of mandate in this court alleging it had no plain, speedy or adequate remedy at law because it would be put to the time and expense to defend an unnecessary trial when no cause of action existed. (See *Conway* v. *Municipal Court* (1980) 107 Cal.App.3d 1009, 1015-1016

[166 Cal.Rptr. 246].) An alternative writ was issued on September 13, 1984, directing the trial court to vacate its June 20, 1984, order, or to show cause why it should not do so. The trial court declined.

DISCUSSION

1. *When a demurrer should be sustained.*

■ The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 306 [191 Cal.Rptr. 704].)

■ The allegations in the complaint are to be liberally construed with a view to substantive justice between the parties. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) A complaint survives a demurrer if it states facts disclosing some right to relief. (*Foy* v. *Greenblott* (1983) 141 Cal.App.3d 1, 13 [190 Cal.Rptr. 84].)

■ It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. (*Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 871, fn. 7 [193 Cal.Rptr. 760]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 844, 845, pp. 2449-2450.)

However, a demurrer may be sustained without leave to amend where it is probable from the nature of the complaint and the previous unsuccessful attempt to plead that the plaintiff cannot state a cause of action. To do so does not constitute an abuse of discretion. (*Kingsbury* v. *Tevco, Inc.* (1978) 79 Cal.App.3d 314, 318-319 [144 Cal.Rptr. 773].) Where the nature of a plaintiff's claim is clear, but under substantive law no liability exists, leave to amend should be denied, for no amendment could change the result. (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942 [143 Cal.Rptr. 255].)

In the instant case, Richards' second amended complaint failed to state any cause of action, and therefore Tyco's demurrers should have been sustained without leave to amend.

2. ■ *Mandate is a proper remedy to reach an abuse of discretion by the trial court in overruling a demurrer.*

An order overruling a demurrer is nonappealable, and ordinarily is to be reviewed upon appeal from the judgment entered after trial. (*County of Santa Barbara* v. *Superior Court* (1971) 15 Cal.App.3d 751, 754 [93

Cal.Rptr. 406].) Generally, absent a showing that under the particular facts appeal is not a "plain, speedy and adequate remedy" (Code of Civ. Proc., § 1086), an appeal is presumed to be adequate. (*Attorney General* v. *Superior Court* (1953) 41 Cal.2d 249, 250 [259 P.2d 1].)

However, mandamus is an appropriate remedy to obtain relief from a nonappealable order (*Varra* v. *Superior Court* (1960) 181 Cal.App.2d 12, 14 [4 Cal.Rptr. 920]), and the presumption of adequacy of remedy by appeal does *not* apply when a trial court's nonappealable order can only be reached by appeal from a subsequent judgment. (*State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428 [304 P.2d 13]; *Conway* v. *Municipal Court, supra,* 107 Cal.App.3d at p. 1015.)

■ For a writ of mandate to issue, Code of Civil Procedure section 1085 requires a clear and present duty for the performance of "an act which the law specially enjoins," and a clear, present right in the petitioner to performance of that act. (*Taylor* v. *Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710]; *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

"Although it is well established that mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can [reasonably] be exercised in only one way." (*La Bue* v. *Superior Court* (1977) 75 Cal.App.3d 264, 268-269 [142 Cal.Rptr. 83].)

This is an appropriate case for a writ.

3. *Richards did not allege facts sufficient to state a cause of action under section 970.*

Richards' legal theory underlying his lawsuit is that Tyco's conduct as spelled out in his complaint constituted a violation of section 970, and the alleged statutory violation also constituted a violation of public policy which would therefore support the common law tort of wrongful discharge.

In its minute order overruling the demurrer to the first and second causes of action, the trial court concurred with Richards' theory stating: "The 1st cause of action for violation of Labor Code section 970 states enough facts as does the 2nd cause of action for wrongful discharge (based, somewhat redundantly on the public policy found in section 970)."

a. *Overview of California law.*

The general rule in employment of an unspecified term is that either an employer or an employee may terminate employment at will on notice to

the other. (Labor Code, § 2922.) Some exceptions to the employment-at-will rule have been carved out in recent years, including exceptions where employers violate public policy in the discharge of employees. (*Shapiro* v. *Wells Fargo Realty Advisers* (1984) 152 Cal.App.3d 467, 475-477 [199 Cal.Rptr. 613].)

The leading case exemplifying the "public policy theory" of wrongful discharge is *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330], wherein an employee terminated for refusal to participate in price-fixing was found to have been wrongfully discharged. Other public policy exceptions to Labor Code section 2922 have included dismissals for refusing to testify falsely (*Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 189 [344 P.2d 25]), for filing workers' compensation claims (*Portillo* v. *G. T. Price Products, Inc.* (1982) 131 Cal.App.3d 285 [182 Cal.Rptr. 291]), for protesting working conditions as unsafe (*Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 298 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015]) and for associating in a union (e.g., *Wetherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168 [79 Cal.Rptr. 543]; *Glenn* v. *Clearman's Golden Cock Inn, Inc.* (1961) 192 Cal.App.2d 793 [13 Cal.Rptr. 769]).

■■ ■ The trial court in this case, reasoned that the public policy pronouncement codified by section 970, whereby employers may not cause employees to move to, from, or within California by misrepresentation of the nature, length or physical conditions of employment, provides another exception to the employment-at-will doctrine, and would have allowed Richards' cause of action under this public policy theory.

The problem with the trial court's rationale is that section 970, although applied exceptionally to other employment situations (see *Munoz* v. *Kaiser Steel Corp.* (1984) 156 Cal.App.3d 965 [203 Cal.Rptr. 345]), was enacted to protect migrant workers from the abuses heaped upon them by unscrupulous employers and potential employers, especially involving false promises made *to induce migrant workers to move in the first instance.* (*Collins* v. *Rocha* (1972) 7 Cal.3d 232 [102 Cal.Rptr. 1]; *Rivera* v. *Anaya* (9th Cir. 1984) 726 F.2d 564.) In this fact situation, however, no such knowing misrepresentations were alleged to have been made at the time of negotiations between Richards and Tyco for the relocation.

In pertinent part, section 970 provides that "[n]o person, . . . directly or indirectly, shall influence, persuade, or engage any person to change . . . from any place outside [California] to any place within the state . . . for the purpose of working in any branch of labor, *through or by means of knowingly false representations,* whether spoken [or] written . . . concerning

either: [¶] (a) The kind, character, or existence of such work; [¶] (b) The length of time such work will last, . . ." (Italics added.)

From the allegations of Richards' second amended complaint, granted, Tyco persuaded Richards to move to California to work, but nowhere does Richards allege facts from which it could even be inferred that Tyco made *knowingly false representations.*

b. *Richards did not allege knowingly false representation.*

In *Bondi* v. *Jewels by Edwar, Ltd.* (1968) 267 Cal.App.2d 672 [73 Cal.Rptr. 494], the owners of a jewelry store persuaded Bondi, a jewelsmith, to close his jewel business and to work at their store, "so long as [Bondi] should satisfactorily perform as manager of and jewelsmith for Jewels." (*Id.,* at p. 674.) Bondi filed his complaint alleging, inter alia, that "at the time said promise [of employment] was made the defendants did not intend to perform it; such promise was made by defendants with the intent on their part to induce plaintiff to close his business and thereby remove him as a competitor of defendants and to induce plaintiff to enter into and remain in their employ until such time as they should, at their will, elect to terminate such employment." (*Id.,* at p. 675, italics added.) Bondi alleged not to have known their secret intent, and that he would not have acted as he did had he known it.

The *Bondi* court reversed the lower court's dismissal, as Bondi's allegations regarding defendants' intent sufficed to state a cause of action, inter alia, for false misrepresentation.

■ A false promise is actionable on the theory that a promise implies intention to perform, that intention to perform or not to perform is a state of mind, and that misrepresentation of a state of mind is a representation of fact. (3 Witkin, Cal. Procedure, *supra,* § 581, p. 2219.)

■ To plead misrepresentation, the necessary averment is the general statement that the promise was made without any intention to perform it, or that the defendant did not intend to perform it. (*Union F. M., Ltd.* v. *Southern Cal. F. M.* (1938) 10 Cal.2d 671, 675 [76 P.2d 503].) The absence of such a general allegation is ordinarily a fatal defect. (*Scafidi* v. *Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 558 [165 Cal.Rptr. 260]; *Hills Trans. Co.* v. *Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 707 [72 Cal.Rptr. 441].)

■ Unlike *Bondi,* the instant case does not present a complaint which sufficiently pleads intent to misrepresent. Tyco promised Richards a pay

increase, which he apparently received. Richards indicates that his responsibilities did not meet his expectations, but he alleges no facts pointing to Tyco's having *induced* him to come to California as manager, all the while *intending* to keep him at the same level of responsibility as in Chicago.

Neither did Richards allege that Tyco promised him a fixed period of employment. The general oral understanding of the transfer appeared long term at its inception. At the same time, Richards apparently knew the move involved uncertainty and risk, inasmuch as Tyco had had an "erratic history of sales in California."

Richards did not plead that he questioned Tyco's explanation for his discharge, i.e., that the projected change over had not turned out to be "economically feasible." He did not allege that Tyco had *anticipated* the failure of its California venture and had induced him to move here "through or by means of *knowingly* false representations . . . concerning . . . the length of time [his] work [would] last . . . ." (§ 970; italics added.)

Therefore, we must hold that although section 970 could apply to Richards (See *Munoz* v. *Kaiser Steel Corp., supra,* 156 Cal.App.3d 965), his complaint fails to allege that Tyco intended *not* to perform under his relocation agreement as it had promised. Thus, the trial court erred in overruling Tyco's demurrer to the section 970 cause of action.

### 4. *Richards failed to state a cause of action for wrongful discharge.*

"Under traditional common law rule, codified in Labor Code section 2922, an employment contract of indefinite duration is in general terminable at 'the will' of either party.[2] Over the past several decades, however, judicial authorities in California and throughout the United States have established that under both common law and the statute an employer does not enjoy an absolute or totally unfettered right to discharge even an at-will employee. In a series of cases arising out of a variety of factual settings in which a discharge *clearly violated an expressed statutory objective or undermined a firmly established principle of public policy,* courts have recognized that an employer's traditionally broad authority to discharge an at-will employee 'may be limited by statute . . . or by considerations of public

---

[2]Labor Code section 2922 provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month."

policy.'" (Italics added; *Tameny* v. *Atlantic Richfield Co.*, *supra*, 27 Cal.3d at p. 172; *Shapiro* v. *Wells Fargo Realty Advisors*, *supra*, 152 Cal.App.3d at p. 475.)

A series of recent California cases have limited the application of Labor Code section 2922.[3] This court's decision in *Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at pp. 475-476, set out the three distinct theories, to wit: (1) A tort cause of action for wrongful discharge in violation of public policy (*Tameny* v. *Atlantic Richfield Co., supra,* at p. 167; (2) a cause of action, sounding in both tort and contract, for employer's breach of the implied covenant of good faith and fair dealing (*Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722]); and (3) a cause of action for employer's breach of an implied-in-fact covenant to terminate only for good cause (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917].)

Because this writ petition does not concern the latter two exceptions to Labor Code section 2922, we focus on the public policy violation cause of action.

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action . . . ." (*Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 170; *Newfield* v. *Insurance Co. of the West* (1984) 156 Cal.App.3d 440, 443-444 [203 Cal.Rptr. 9].)

In *Tameny,* the plaintiff alleged that he was discharged for failure to engage in price-fixing. As a retail sales representative for Atlantic Richfield Co., he allegedly was pressured to force independent dealers to lower their prices in a manner that would violate federal and state antitrust legislation. According to Tameny's complaint, his refusal to engage in price fixing was the sole reason for his discharge. (*Tameny* v. *Atlantic Richfield Co., supra,* at p. 171.)

The conduct of the employer in *Tameny* was wrongful because the motive for discharge was contrary to "some substantial public policy," evidenced by the fact that the discharge was in violation of a statute. (*Id.,* at p. 177.)

---

[3]For a thorough discussion of these decisions, see Miller & Estes, *Recent Judicial Limitations on the Right to Discharge: A California Trilogy* (1982) 16 U.C. Davis L.Rev. 65; Rohwer, *Terminable-At-Will Employment: New Theories for Job Security* (1984) 15 Pacific L.J. 759.

"Although there is dictum in *Tameny* suggesting that there can be a public policy sufficient to support a cause of action for wrongful discharge absent statutory authority, no California cases have so held; however, one Court of Appeal case has expressly stated that courts have no power to declare public policy in wrongful discharge cases without statutory support. (See *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390 . . . .)" (*Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 477.)

 Mere allegation of public policy violation of a statute does not suffice to state a cause of action. In *Pugh,* the plaintiff alleged three public policy violations caused by his discharges, two of which had basis in California code sections. (*Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at pp. 322-324.) Although the *Pugh* court found breach of an implied-in-fact covenant to terminate only for good cause, it concluded that the evidence did not establish a prima facie and cognizable case of wrongful termination based upon public policy theory. (*Ibid.*)

In the instant case, Richards' complaint did not state expressly which public policy Tyco had allegedly violated by discharging him. The second amended complaint alleged that Tyco's acts, as alleged in paragraphs 1 through 12, "constituted a violation of public policy and a wrongful discharge."

The conclusionary allegation of public policy violation in the second amended complaint was explained in Richards' points and authorities in opposition to Tyco's demurrer as follows: ". . . , *if plaintiff has pleaded a cause of action for violation of labor code [sic] section 970,* then a wrongful discharge predicated on that violation is equally viable. By the enactment of that code section, the legislature has expressed its intent that both the individual and the community must be protected from the harm that is inflicted when a fraudulently induced employment ceases, and the individual is left in a community without roots or resources and becomes a charge on that community." (Italics added.)

As indicated, we find no sufficient facts to support a cause of action for violation of section 970.

### CONCLUSION

Because the trial court abused its discretion in overruling Tyco's demurrers to Richards' second amended complaint, we grant the Tyco's requested writ of mandamus.

### Disposition

Let a peremptory writ of mandate issue, directing the superior court to vacate the portion of its order of June 20, 1984, overruling Tyco's demurrers, and enter a new and different order sustaining same.

Danielson, J., and Arabian, J., concurred.

A petition for a rehearing was denied February 21, 1985, and the petition of real party in interest for a hearing by the Supreme Court was denied April 24, 1985. Mosk, J., was of the opinion that the petition should be granted.