892 F.2d 85
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bruce YOUNGBERG, Plaintiff-Appellant,
v.
GREAT WEST LIFE ASSURANCE COMPANY, a/k/a Life-Assurance
Company, a Canadian Corporation, Scientific Atlanta, Inc., a
Georgia Corporation, the Scientific Atlanta Long Term
Disability Plan, a Georgia Long Term Disability Plan, and
Does 1 through 25, inclusive, Defendants-Appellees.
 No. 88-6206.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1989.
Decided Dec. 19, 1989.
 
 Before SKOPIL, FLETCHER and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Bruce Youngberg appeals the district court's grant of summary judgment in favor of both Great West Assurance Company ("Great West") and Scientific Atlanta, Inc. ("Scientific Atlanta"). The district court ruled that Youngberg had produced insufficient evidence to show that Great West had arbitrarily or capriciously denied him long term disability benefits under an ERISA plan. The court further ruled that Youngberg had not presented any evidence that Great West had denied his claim in bad faith. Finally, the court ruled that Youngberg had not established that Scientific Atlanta had wrongfully terminated Youngberg from his job. We affirm the district court's rulings.
 
 FACTS
 
 3
 Bruce Youngberg was employed by Scientific Atlanta. He had worked for the company (and its predecessor) since January 1971. In March 1983, Youngberg took a disability leave of absence claiming that upper back pain prevented him from working at his job.
 
 
 4
 Under an ERISA plan, Scientific Atlanta provided benefits to any employee who was disabled for longer than twenty-six weeks. That long term disability benefits plan was administered by Great West pursuant to an insurance contract between Great West and Scientific Atlanta. Under the plan an employee may receive benefits for six months if the employee is unable to perform his own job. After those initial six months, the employee may only receive continuing benefits (called "long term disability benefits") if the employee is so disabled that he is unable to engage in any occupation for which he is reasonably qualified. Such a person is considered "totally disabled."
 
 
 5
 Youngberg applied to Great West for long term disability benefits. Youngberg supported his request with a report from his regular physician, Dr. Harris. The report stated that Youngberg suffered from persistent back pain and that Youngberg should remain at home for three to six months. In October of 1983, Great West initially approved Youngberg's claim. However, before Great West began paying benefits, it received a series of letters from a Dr. Dailey. Dr. Dailey had previously treated Youngberg at the Scripps Clinic. In essence, Dr. Dailey's letters stated that neither he nor his colleagues were able to locate any objective sources for the pain of which Youngberg complained. Great West also received a supplementary report from Dr. Harris that stated that Youngberg would only be disabled until the end of October 1983.
 
 
 6
 In response, Great West requested additional medical information from Youngberg and asked that he undergo an independent medical examination. Youngberg then was examined by two doctors both of whom concluded that Youngberg was not totally disabled. Great West also had a consulting firm prepare an occupational rehabilitation report that listed jobs which Youngberg could perform without having to sit for extended periods of time. Great West then had its medical director review Youngberg's entire file. The medical director concluded that Youngberg was not totally disabled. Therefore, Great West denied Youngberg's claim for long term disability benefits but paid Youngberg benefits up through the time of its decision because the investigation had taken such a long time.
 
 
 7
 During the course of the disability investigation, Youngberg changed doctors and began treatment with a chiropractor, Dr. Angleitner. Great West did not request or review Dr. Angleitner's reports prior to making its decision.
 
 
 8
 After Great West denied Youngberg's disability claim, Youngberg contacted Scientific Atlanta and asked to be reinstated in his position. Scientific Atlanta responded that it did not have an open position for which Youngberg was qualified but that it would place Youngberg's name on its disability recall list for six months. Youngberg withdrew his name from the disability recall list after he initiated this suit.
 
 DISCUSSION
 
 9
 A. Standard of Review.
 
 
 10
 This court reviews de novo a district court's grant of summary judgment to determine whether the court correctly found that there was insufficient evidence to create a material dispute of fact. Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 764 (9th Cir.1986). In this case, the district court used an "arbitrary and capricious" standard when it reviewed Great West's decision to deny disability benefits. The Supreme Court decided Firestone Tire and Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), after the district court had granted summary judgment in this case. Prior to Firestone the proper review was under an "arbitrary and capricious" standard. See, e.g., Fielding v. International Harvester Co., 815 F.2d 1254 (9th Cir.1987). In this case, the proper standard of review under Firestone is unclear. However, regardless of the standard, the district court properly found that Youngberg failed to present evidence sufficient to enable a reasonable trier of fact to find in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 11
 B. Denial of Benefits.
 
 
 12
 In this case, Great West had before it reports or reviews from seven different doctors, a psychological evaluation and an occupational rehabilitation report. The consistent conclusion from all of the evidence was that Youngberg was not totally disabled. The psychological report indicated that Youngberg complained of pain to avoid doing unpleasant tasks. Finally, the rehabilitation report listed several alternative occupations in which Youngberg could have comfortably worked. Taken as a whole, the evidence before Great West overwhelmingly supported its decision that Youngberg was not totally disabled.
 
 
 13
 Youngberg complains that there is an issue of fact raised merely because Great West did not have Dr. Angleitner's records at its review. However, Youngberg fails to show that those records would have made one whit of difference in Great West's decision. The only evidence from Dr. Angleitner contained in the record is some ambivalent deposition testimony. In that testimony Dr. Angleitner indicates that Youngberg was actually improving during the time that Angleitner treated him. Furthermore, Dr. Angleitner never stated in that testimony that he believed Youngberg to be totally disabled.
 
 
 14
 It is also worth noting that after Great West first denied Youngberg's claim, it gave Youngberg an opportunity to submit additional information to determine whether Youngberg's claim should be reconsidered. The only material that Great West received was a January 1985 letter from Dr. Angleitner stating that Youngberg was no longer disabled. Youngberg did not tender any additional medical records.
 
 
 15
 In a proper case, the failure to obtain medical records from a treating physician may amount to a breach of duty by the plan administrator. This is not that case.
 
 
 16
 Given our conclusion that Youngberg failed to present sufficient evidence to raise a material dispute of fact, we affirm the district court's grant of summary judgment even if the court should have used a different standard of review. We will affirm a district court's ruling if the result is correct even though the court may have reached such a result with incorrect reasoning. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985).
 
 
 17
 C. Bad Faith.
 
 
 18
 Youngberg claimed that Great West denied his claim in bad faith because it consciously disregarded Dr. Angleitner's favorable reports. However, Youngberg does not present any evidence to support that claim. Instead, the facts suggest that Great West did not request Angleitner's reports because it already had overwhelming evidence showing that Youngberg was not disabled. Furthermore, Great West actually paid Youngberg benefits for a greater period of time than was required. Great West did that to compensate Youngberg for the delay caused by the lengthy investigation. We also affirm the district court's grant of summary judgment in this regard.
 
 
 19
 D. Wrongful Termination.
 
 
 20
 California recognizes several theories of recovery for wrongful termination of employment: (1) a tort of wrongful discharge in violation of public policy, (2) breach of an implied covenant of good faith and fair dealing, and (3) breach of an implied covenant to terminate only for cause. Shapiro v. Wells Fargo Realty Advisors, 152 Cal.App.3d 467, 475-76, 199 Cal.Rptr. 613 (1984). Each cause of action requires that the employee first show that he has been terminated. An employee may establish that element by proving that he was either terminated in fact or terminated constructively. In order to establish a constructive discharge, an employee must establish that the employer has created employment conditions that are so intolerable that the employee is forced to resign. Smith v. Brown-Forman Distillers Corp., 196 Cal.App.3d 503, 513, 241 Cal.Rptr. 916 (1987); see also BAJI No. 10.02 (7th ed., 1988 supp.).
 
 
 21
 In this case Youngberg cannot show that he was constructively discharged. Scientific Atlanta's actions were consistent with its employee policy manual. Scientific Atlanta could not reinstate Youngberg immediately but it did offer to keep him on its disability recall list for six months. Youngberg has presented no evidence that Scientific Atlanta failed to check for an open position or that Scientific Atlanta intended to keep Youngberg on the disability list without ever reinstating him. In fact, Youngberg chose to be removed from the disability recall list and that decision reflects a strategic choice made by Youngberg and his attorney prior to suing Great West for disability benefits. We find no support for Youngberg's claim that he was wrongfully terminated by Scientific Atlanta.
 
 
 22
 E. Youngberg's Request for Attorneys' Fees.
 
 
 23
 ERISA authorizes a district court to award attorneys' fees to either party. 29 U.S.C.A. § 1132(g) (West 1985). While this court has never explicitly required a party to prevail before we will award attorneys' fees, we find that as a practical matter it would be an unusual case in which a non-prevailing party was entitled to recover attorneys' fees. See, e.g., Marquardt v. North Am. Car Corp., 652 F.2d 715, 718 n. 2 (7th Cir.1981). This case is not unusual.
 
 
 24
 Moreover, we have previously set out five factors that a court should use when it decides whether a party should be awarded attorneys' fees. Hummel v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980). Applying the Hummel factors to this case, Youngberg would not be entitled to attorneys' fees from Great West.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3