[Crim. No. 16932. First Dist., Div. Four. Dec. 13, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILIP SHELTON BAKER, Defendant and Appellant.

COUNSEL

Roderick P. Bushnell, under appointment by the Court of Appeal, and Bushnell, Caplan & Fielding, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ann K. Jensen and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Philip Shelton Baker appeals from a judgment convicting him of violation of Penal Code section 520 (extortion by use of force or threat) and Penal Code section 523 (extortion by threat).

Appellant, and other persons not parties to this appeal, were investors in a corporation that was in the process of converting into a bar a building adjacent to property owned by one Leo Verner. Verner and other residents of the area had filed protests with the Alcoholic Beverage Control (ABC) opposing the issuance of a liquor license to the corporation. After negotiations failed between the corporation and Verner (the other residents having withdrawn their protests), the appellant, the general manager of the bar, attempted by means of extortion by use of force or threats to pressure Verner into dropping his protest. The specific acts of extortion to the extent material to the appeal are discussed in the opinion.

I

Penal Code section 520 provides for the punishment of any person who extorts money or other property from another by means of force or threat. Penal Code section 523 provides for the punishment of any person who intends to extort money or other property from another by means of a threat.

Appellant challenges the jury instruction which stated that "the right to make and prosecute a protest is property within the meaning of Sections 520 and 523 of the Penal Code of the State of California." Appellant contends that the use of the words "other property" in Penal Code sections 520 and 523 does not include a "protest."

The word "property" in Penal Code section 7, subdivision 10, includes both real and personal property. Penal Code section 7, subdivision 12, defines "personal property" to include money, goods, chattels, things in action and evidence of debt.

A thing in action is defined in Civil Code section 953 as "a right to recover money or other personal property by a judicial proceeding." ■ A thing in action includes a right of action for personal injury (*Justis* v. *Atchison etc. Ry. Co.* (1910) 12 Cal.App. 639 [108 P. 328]), breach of contract (*Meserve* v. *Superior Court* (1934) 2 Cal.App.2d 468 [38 P.2d 453]), or fraud (*Wikstrom* v. *Yolo Fliers Club* (1929) 206 Cal. 461 [274 P. 959]). Although a limited definition could have been applied to things in action, the courts have expanded its coverage so that things in action "now represent things to the imagination in the light of tangible objects; and, as such, they are the subject of contract, sale, gift, mortgage, bailment, and pledge; and, under the provisions of our Codes, they are personal property, subject to taxation, attachment, execution, levy, and sale." (*Payne* v. *Elliot* (1880) 54 Cal. 339, 341-342.)

In interpreting the meaning of "property" within the Penal Code provisions pertaining to extortion, the California Supreme Court stated that "the right to take and prosecute an appeal is property within the meaning of the Code . . . [thus] a threat made for the purpose of inducing an appellant to dismiss an appeal is a threat made with intent to extort property from another." (*People* v. *Cadman* (1881) 57 Cal. 562, 564.)

*People* v. *Kohn* (1968) 258 Cal.App.2d 368 [65 Cal.Rptr. 867], and *People* v. *Robinson* (1933) 130 Cal.App. 664 [20 P.2d 369], cited by appellant, are inapposite. ■ The right to file a protest with the ABC is a statutorily created right. In view of the expanded approach California courts have taken with regards to the definition and application of "things in action," it is consistent to conclude that for the purposes of Penal Code sections 520 and 523, the words "other property" include the right to file an administrative protest. Verner had a statutorily created right to protest appellant's petition and a denial of that right by means of fear or threat clearly falls within the meaning of extortion of other property.

## II

Appellant contends that there is insufficient evidence to support a conviction for extortion. ■ In determining whether the sufficiency of evidence supports the verdict, the appellate court must view the evidence

in the light most favorable to the finding and must presume the existence of every fact in support of the verdict which the jury could reasonably deduce from the evidence. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ Appellant contends the only evidence linking him to the extortion plot is the testimony of Dona Marr and his own few admissions. He fails to give any weight to his own confessions, to the testimony of his cellmate, Michael Adkins, to the testimony of the cab driver, and to Salsman's and Rhodes' testimony. Appellant admitted his handwriting was on the photographs of Verner's wife, that he urged Marr not only to "get her story straight," but also to write a letter denying appellant was threatening Marr or her children. Adkins testified that appellant admitted tapping Verner's telephone, breaking into Verner's home, stealing the photographs, sending the photographs along with a threatening note, and instructing Marr to deliver the manila envelope containing the photographs and note to a taxicab driver who, in turn, delivered it to Verner's home. Adkins further testified appellant was fearful his handwriting on the photographs would convict him and that appellant was considering buying off a handwriting expert. Adkins testified he attempted to help appellant by practicing to copy appellant's handwriting. Adkins stated appellant was additionally worried about Dona Marr's testimony and admitted he may have to marry her or otherwise fix her with an overdose of drugs to keep her from testifying.

George Beyer, a taxicab driver with United Taxi, testified that on December 15, 1973, he was called to the St. Claire Hotel and upon arriving was approached by a young lady who gave him instructions to deliver a manila envelope to the address of Verner's home. For $5, Beyer drove to Verner's home and delivered the envelope to a young girl who answered the door.

Both Salsman and Rhodes testified to the two conversations they had with Dona Marr in which she told them of the entire extortion plot appellant engaged in against Verner. Furthermore, Salsman testified appellant denied, upon initially being questioned about the photographs, that the handwriting was his.

Upon review of the record, we find there is substantial evidence upon which the jury could find appellant was guilty of extortion beyond a reasonable doubt. Furthermore, it is the jury's duty to pass upon the credibility of the witnesses (Evid. Code, § 312, subd. (b)), and there was

ample reason to suspect the veracity of both appellant's and Marr's testimony.

## III

Appellant claims that the prosecution, the sheriff's office and the court prevented appellant and Marr from marrying for fear that the marital privilege under Evidence Code section 980 would be raised. Appellant contends that this action "had the effect of denying him equal protection of the laws in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the California Constitution" in that a person who could afford bail would not have been in confinement and would have been free to marry. Appellant claims that had he been permitted to marry he could then claim the privilege under Evidence Code section 980.

Section 980, however, would not have been of any help to appellant even if he had been permitted to marry. Section 980 provides in part as follows: "Subject to Section 912 and except as otherwise provided in this article, a spouse . . . whether or not a party, has a privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife." ■ From the language of the section it is clear that the communication must be made during the period of the marriage and made in confidence between the spouses. In the present case neither requirement is met. The tape recordings were made prior to the time appellant first requested of the sheriff that he and Marr be allowed to marry and prior to appellant's attempt to perform the ceremony himself.[1] Furthermore, the communication was not confidential as Marr knew the conversation was being recorded for use by third parties and appellant knew that jail conversations were often recorded, he having been employed by the sheriff for this purpose in the past. Thus, even if the marriage had taken place, the subject matter of the communication could have been presented to the jury, so appellant was not prejudiced.

■ In addition, under Evidence Code section 981, "[t]here is no privilege . . . if the communication was made, in whole or in part, to

---

[1] Appellant claims he was a minister of the "Universal Life Church" and thus empowered to perform marriages. However, there is no claim that he had obtained a marriage license, that a witness was present, or that he was proceeding under Civil Code section 4213.

enable or aid anyone to commit or plan to commit a crime or a fraud." Appellant's conversations with Marr were attempts to suppress evidence and induce false testimony, and both are crimes. (Pen. Code, §§ 118, 127.) Thus, the communications are not privileged.

In view of the foregoing, appellant has not shown how the alleged violation of his constitutional rights have prejudiced him at the trial. As stated in *People* v. *Archerd* (1970) 3 Cal.3d 615, 643 [91 Cal.Rptr. 397, 477 P.2d 421], "Anyone who seeks on appeal to predicate a reversal of conviction on error must show that it was prejudicial."

## IV

Appellant made several phone calls from the jail facility to Dona Marr, who tape recorded the conversations. Hugh Mullin, deputy district attorney, Cecil Rhodes, fire marshall, and Richard Salsman, district attorney's investigator, worked in conjunction in directing the tape recording.[2]

Appellant objected to the admissibility of testimony pertaining to the contents of the conversations on the grounds the tape-recorded conversations were in violation of Penal Code section 632.[3].

Appellant has overlooked Penal Code section 633.5,[4] which is dispositive of the issue. ■ Confidential communications may be recorded by a party to the communication if the substance of the communication relates to the commission of the crime of extortion by the other party to

---

[2]The tapes were not introduced in evidence, however, the prosecution referred to the contents of the tapes in the examination of the witness, Marr.

[3]Penal Code section 632 provides in pertinent part:
"(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records such confidential communication, whether such communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, . . . shall be punishable . . . .

". . . . . . . . . . . . . . . . . .

"(c) The term 'confidential communication' includes any communication carried on in . . . any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

[4]Penal Code section 633.5 provides in pertinent part: "Nothing in Section 631 or 632 shall be construed as prohibiting one party to a confidential communication from recording such communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to such communication of the crime of extortion, . . . and nothing in Section 631 or 632 shall be construed as rendering inadmissible in a prosecution for extortion, . . . any evidence so obtained."

the communication. Furthermore, evidence obtained from the recording is admissible in a prosecution for extortion. The substance of the conversations related to the pending prosecution of appellant for extortion. During trial, Marr testified that appellant told her what to say at trial and even threatened her if she testified against him. The manner in which the conversations between appellant and Marr were tape recorded and the substance of the conversations clearly provide for the admissibility of Marr's testimony pursuant to Penal Code section 633.5.

Appellant's reliance on Penal Code section 632 is misplaced since that section relates only to confidential communications. ■ It is settled law that a prisoner does not have the right of privacy guaranteed to nonincarcerated citizens. (*In re Ferguson* (1961) 55 Cal.2d 663, 670-671 [12 Cal.Rptr. 753, 361 P.2d 417].) "Except only insofar as concerns consultation with his attorney in a room designated for that purpose, a prisoner has no right of privacy in a jail." (*People* v. *Lopez* (1963) 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16].) "[A]n inmate of a jail or prison may not successfully complain of such a recording even if its taking was not known to him at the time." (*People* v. *Chandler* (1968) 262 Cal.App.2d 350, 355 [68 Cal.Rptr. 645].)

There is evidence in the record that appellant was aware of the law regarding a prisoner's privacy. Marr testified that both she and appellant know jail conversations are taped. In fact, as stated above, appellant had previously been employed with the sheriff's department to tap the telephones of prisoners at the main jail. Clearly, appellant had no reasonable expectation of privacy during his conversations with Marr, thus section 632 is inapplicable.

V

During questioning at trial, Dona Marr indicated she did not tell the truth before the grand jury, therefore, she was going to continue to lie to prevent a perjury charge from being brought against her. With the assistance of a court-appointed attorney, Marr decided to assert her privilege against self-incrimination when asked the same questions she was asked during the grand jury proceeding. Subsequently, the prosecution offered Marr, pursuant to Penal Code section 1324, immunity from prosecution for burglary charges, extortion charges, conspiracy to commit such charges, and for perjury committed up to the date of Marr's trial testimony. Marr was informed the order granting immunity did not cover any perjury she committed during trial.

Appellant argues the order granting immunity should have exempted perjury altogether allowing Marr to assert her privilege against self-incrimination. Appellant claims Marr was forced to lie at trial to keep her testimony consistent with her grand jury testimony.

The court in *People* v. *Hathcock* (1971) 17 Cal.App.3d 646 [95 Cal.Rptr. 221], was faced with a situation similar to ours. The court upheld the witness' conviction of perjury stating: "[A] rule which would permit a witness who has been granted immunity under section 1324, and who has testified, to assert the privilege against self-incrimination in order to refuse to answer a question designed to test the credulity of his testimony would invite treachery as well as perjury . . . . The purpose of immunity statutes is to secure truthful testimony, not to license perjury." (*People* v. *Hathcock, supra,* 17 Cal.App.3d 646 at p. 649.)

It is clear that the order granting immunity from prosecution for any perjury committed up to, but not including, the trial testimony, was proper. Marr was not forced to lie at trial, as appellant claims, for she was granted immunity from prosecution for perjury she committed before the grand jury. Her only obligation was to testify truthfully at trial.

## VI

Johnny Downs is a coowner and was involved with the bar during the time the protests were filed with the ABC. At trial, he was asked about a particular conversation he had with witness Kyle Kennedy. Downs denied ever speaking to Kennedy about the circumstances surrounding the dropping of the Verner protest. Downs denied he told Kennedy that he tapped Verner's telephone, that he and appellant burglarized Verner's home, and that he made copies of the photographs, and that he was involved with the delivery of the photographs to a cab driver.

Kyle Kennedy was then called to the stand and testified to a specific conversation he had with Downs. Kennedy testified Downs told him that appellant tapped Verner's telephone and got information regarding a sex ring. Kennedy further testified Downs disclosed that they went in to Verner's home, took some photographs and then returned the photographs by cab with a note.

The testimony of both Downs and Kennedy was objected to by defense counsel. The trial judge admitted Kennedy's testimony for the sole purpose of impeaching Downs.

Appellant argues the testimony of Downs and Kennedy was irrelevant and, pursuant to Evidence Code sections 350 and 351, should have been excluded. Both sections provide for the admissibility of only relevant evidence. Appellant further argues the testimony should have been excluded under Evidence Code section 352, on the grounds it may "create substantial danger of undue prejudice." (Evid. Code, § 352.)

█ Although Downs was not charged in the instant matter and only mentioned appellant's name once during the conversation with Kennedy, there is sufficient testimony from other witnesses which indicates Downs participated with appellant in the extortion plot. Certainly Downs' testimony regarding his knowledge of the wiretapping, burglary and threats against Verner is relevant and has a tendency to prove disputed facts.

█ Downs' prior inconsistent statements are admissible not only to impeach his credibility, but also to prove the truth of the matters asserted therein. (Evid. Code, § 1235; *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]; *People* v. *Romo* (1975) 14 Cal.3d 189 [121 Cal.Rptr. 684].)

Appellant was not prejudiced by the admission of Downs' prior inconsistent statement for the purposes of impeachment, for under present law, Downs' statements could have also been admitted for their truth.

The Attorney General's motion to take judicial notice of the "Certificate of Registry of Marriage" is denied.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1979.