Filed 5/10/13

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C070295 |
| v. | (Super. Ct. No. CR029160) |
| TIMOTHY FISHER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Lassen County, F. Donald Sokol, Judge.  Reversed in part and affirmed in part.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II, III, and IV of the discussion.

1

A jury convicted defendant Timothy Fisher of delivering a letter with intent to extort money or other property (Pen. Code, § 523[1]) and found a prior prison term allegation (§ 667.5) to be true.

Sentenced to county jail pursuant to section 1170, subdivision (h), for an aggregate term of four years, defendant appeals. He contends (1) insufficient evidence supports his conviction, (2) he was entitled to day-for-day conduct credit, (3) the trial court imposed an unauthorized sentence when it issued an order restraining defendant from contacting the victim, and (4) the minute order erroneously reflects he was sentenced as a two-strike offender. We conclude defendant's demand for a job constituted a demand for property for purposes of the extortion statute. Accordingly, there is sufficient evidence supporting defendant's conviction. As to the conduct credit, restraining order, and sentencing minutes, defendant's contentions have merit. Defendant is entitled to day-for-day credits. The restraining order must be vacated because there is no authority for such a restraining order. And the sentencing minutes must be corrected to delete reference to defendant as a two-strike offender. Thus, we order the trial court to provide day-for-day credits, vacate the restraining order, and delete the incorrect two-strike offender reference in the sentencing minutes. In all other respects, the judgment is affirmed.

FACTS

On September 14, 2011, defendant applied for a job at Susanville Towing, giving a completed job application to Brian Phillips, the owner of the towing company. In his application, defendant stated he desired a mechanic or shop hand position that paid "$ 8.15." Defendant also gave Phillips an envelope. Phillips told defendant his application would be kept on file and if a job became available, defendant would be contacted.

---

[1] Undesignated section references are to the Penal Code.

Phillips opened the envelope and found a four-page letter signed by defendant. Defendant began by thanking Phillips for considering him for employment and stated: "It is important that we acknowledge the fact that this is not a typical situation." Defendant described his prior vandalism conviction for sanding paint off of a car, which he claimed he had committed in the presence of the police.

On the second page, defendant acknowledged the tight job market and commented, "You need not waste your time or mine with the standard; [*sic*] 'Thank you for completing the application . . . . We'll keep it on-file and notify you should anything develop." Defendant said he could pass a drug screen and stated, "I hardly believe that it is unreasonable to ask that you start me at the minimum wage, part-time if you like."

Defendant reminded Phillips that defendant's parole agent, Robert Hartner, had made the job referral. Defendant stated he included the personal cell phone number of his parole agent on his job application without the agent's authorization.

Defendant continued: "I intend to visit your office today at five o'clock p.m. in order to determine whether or not I am employed by your company; [*sic*] Susanville Towing," commenting that he believed he would more than meet expectations. Defendant then threatened, "Regretfully, if not however [*sic*], I will be armed with a piece of eighty-grit sandpaper that we both know I will not hesitate to use. [¶] I know how detrimental it would be to your business if the paint on a customers' [*sic*] vehicle were to be abraded during this endeavor; [*sic*] and would like to avoid this at all costs."

Defendant told Phillips he could "avert this situation by informing Mr. Hartner -- preferably sometime before five -- that I have attempted to extort a job from you," which would require Phillips "to waste an entire day" testifying against defendant, which was another "situation I would like to avoid." Defendant concluded, "please believe me when I say that I am a true professional, that will be a valuable asset to your company."

After Phillips read this letter, he called Agent Hartner to express his concern. Agent Hartner contacted defendant who admitted he had written and given the letter to Phillips. Defendant stated he intended "to carry out the threat of sandpapering the vehicles." Agent Hartner arrested defendant and found on him a piece of 80-grit sandpaper.

Defendant testified at trial. He claimed his prior act of vandalism and his threat in the present case resulted in "self-imposed arrest[s]" because he "decided to take three hots and a cot in lieu of not being able to locate a steady source of income through employment." Upon release from prison on September 6, 2011, he was unable to find employment or acceptable housing. He claimed Hartner had referred him to some housing that was "dilapidated," "deplorable," and associated with "drug use."

An abandoned vehicle in which defendant lived had been towed by Phillips's tow truck company. On September 13, 2011, defendant asked Phillips for a job. Phillips gave appellant a job application. The next day, when defendant returned the application, Phillips told defendant he would keep the application on file. Defendant handed Phillips the demand letter "as a last resort." He added, "[A]t that point, of course, I knew I would be coming to jail."

Defendant had hoped the letter would persuade the victim to hire him. Defendant said the letter was not "intended to be taken at face value" and "[t]he part about extorting a job, that was kind of humorous, also." Although he wanted to be hired, he "figured that [the result] would be an arrest." He was stopped while trying to secure his belongings in anticipation of being arrested. He had the sandpaper because, "in a worst case scenario, if [Phillips] did take the letter as a joke, I might have to brand-ish [*sic*] the sandpaper and make a little noise in order to complete the self-imposed arrest." He explained, "[T]his isn't my normal routine, I don't run around, you know, delivering ultimatums to prospective employers. I was trying to get a job." Defendant thought the entire situation

4

had been "entirely blown out of proportion here" and he did not attempt to extort money or property but instead requested a job.

In rebuttal, Agent Hartner testified the living arrangements defendant rejected provided safe, drug-free environments.

DISCUSSION

I

*Insufficient Evidence*

Defendant contends insufficient evidence supports his conviction for delivering a letter with intent to extort because his demand for a job was not a demand for money or property within the meaning of section 523.[2]  The People respond that defendant's hand-written letter expressly demanded money, namely minimum wage.  In his job application submitted with the letter, defendant wanted a position that paid $8.15 an hour.  Thus, defendant's demand for a job was a demand for a paycheck, i.e., money.  The People further respond that defendant's demand for a job was a demand for property.  We conclude defendant's demand for a job constituted a demand for "property" as that term is broadly construed in cases and statutes.  Thus, we conclude sufficient evidence supports his conviction.

"Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section

---

[2] The trial court instructed the jury on the elements of the charged offense as follows: "One, the defendant sent or delivered a threatening letter to another person.  [¶]  Two, in the letter, the defendant threatened to unlawfully injure the property of the other person or someone else.  [¶]  And three, when sending or delivering the letter, the defendant intended to use fear [to] obtain money with the other person's consent."  (Italics added.) The form or pattern jury instruction (CALCRIM No. 1831) refers to money or property. Defendant does not challenge the jury instruction as given here.

5

519, is punishable in the same manner as if such money or property were actually obtained by means of such threat." (§ 523.) "Fear, such as will constitute extortion, may be induced by a threat, either: [¶] 1. To do an unlawful injury to the person or property of the individual threatened or of a third person." (§ 519.)

Certain words used in the Penal Code are defined "unless otherwise apparent from the context." (§ 7.) "The word 'property' includes both real and personal property." (§ 7, subd. 10.) "The words 'real property' are coextensive with lands, tenements, and hereditaments." (§ 7, subd. 11.) "The words 'personal property' include money, goods, chattels, things in action, and evidence of debt." (§ 7, subd. 12.)

"[S]ubdivision 12 of section 7 does not create an exclusive list of personal property limited to those specifically named." (*People v. Kozlowski* (2002) 96 Cal.App.4th 853, 865 (*Kozlowski*).) In construing the term "property" for purposes of the extortion statute, "a broad interpretation is appropriate." (*Id.* at p. 866.) "Property" for purposes of theft-related crimes means "the exclusive right to use or possess a thing or the exclusive ownership of a thing. [Citations.] The term is all-embracing, including every intangible benefit and prerogative susceptible of possession or disposition. [Citation.] The right to own property implies the right to possess or use a thing to the exclusion of others. [Citation.]" (*Ibid.*)

*Kozlowski* found that a PIN code as a means of access to a bank account was property within the meaning of the extortion statute because a PIN code is intangible property, and intangible property is specifically included in the definition of property. (96 Cal.App.4th at pp. 867; see also *People v. Baker* (1978) 88 Cal.App.3d 115, 119 [the right to prosecute a protest with alcohol licensing agency is property]; *People v. Cadman* (1881) 57 Cal. 562, 563-564 [the right to prosecute an appeal is property].) Relying upon *People v. Kwok* (1998) 63 Cal.App.4th 1236 (*Kwok*), *Kozlowski* reasoned that "[t]he intangible property taken -- the PIN codes -- were the means to obtain the more valuable

6

property -- the bank funds -- contained in those accounts" and destroyed the victims' "intangible benefit of being able to control access to the bank accounts." (96 Cal.App.4th at p. 869.) In *Kwok*, the court determined that a house key is property and the defendant's unauthorized copy of the victim's house key constituted theft because defendant's conduct deprived the victim of something valuable, that is, her right to have exclusive access to her home. (63 Cal.App.4th at pp. 1240-1245, 1248-1251.)

Here, defendant demanded a job or employment. Neither party cites a case directly on point that states a job or employment is tangible or intangible property for purposes of the extortion statute. Defendant simply argues that "[e]mployment provides only the opportunity to earn money in exchange for labor" and a job "does not give the employee access to the assets of the employer." The People cite cases from other jurisdictions that conclude employment is property for purposes of extortion. We find persuasive the reasoning in *People v. Spatarella* (N.Y. 1974) 313 N.E.2d 38 (*Spatarella*) and conclude property for purposes of the extortion statute includes a business owner's right to determine whom to employ.

In *Spatarella*, the defendant threatened a refuse-business competitor to stop servicing a restaurant customer or face a visit to the hospital. The competitor complied with the defendant's demand, removing his containers from the restaurant. (313 N.E.2d at p. 39.) The defendant was convicted of grand larceny by extortion. (*Id.* at p. 38.) The defendant contended that a business customer was not property within the meaning of the extortion statute, which provided: "A person obtains property by extortion when he [or she] compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: (i) Cause physical injury to some person in the future." (*Id.* at p. 39.) *Spatarella* rejected defendant's contention, concluding the defendant's business competitor "possessed an advantageous business relationship," which the defendant

7

obtained through intimidation. (*Id.* at p. 40.) *Spatarella* relied upon case law that determined an employer's business was property. (*Ibid.*) In particular, *Spatarella* cited *People ex rel. Short v. Warden of City Prison* (N.Y.App.Div. 1911) 145 A.D. 861 (*Short*) in which a realtor committed extortion when he obtained a position for a painter and thereafter the realtor threatened the painter with the loss of his job unless he paid the realtor 50 cents a day from the painter's weekly salary. (*Id.* at pp. 862-863.) *Short* determined the realtor's threat to have the painter discharged was a threat to injure the painter's business, "an injury to his property." (*Id.* at p. 863.) Although *Short* and the other cases construed the term property "for the purpose of defining the kind of property which can be threatened," *Spatarella* concluded there was no reason "to construe the term differently in defining the sort of property which can be demanded under pain of injury to the person or other property within the contemplation of the statute. Surely the extortionist's demand for the business itself, or a part of it, is, if anything, more egregious than the demand simply for money." (*Spatarella, supra,* 313 N.E.2d at p. 40.)

Here, defendant did not apply for a job in the normal course and allow the employer to evaluate his application when a job became available. Defendant demanded to be employed by the business owner or face vandalism to vehicles at the business. Defendant's threat to be employed or subject the business to vandalism was a demand for part of the employer's business, i.e., part of the intangible benefit and prerogative of being able to control whom to employ in one's business. (See *Kwok, supra,* 63 Cal.App.4th at p. 1251.) Based on our conclusion that a demand for a job is a demand for property, sufficient evidence supports defendant's conviction. (*People v. Carpenter* (1997) 15 Cal.4th 312, 387.)

8

## II

### *Custody Credit*

Defendant was in custody from September 14, 2011, through sentencing on December 13, 2011.  As recommended by the probation officer, the trial court awarded 91 actual days and 44 conduct days for a total of 135 days of presentence custody credit as against defendant's four-year term.

Defendant contends he is entitled to day-for-day credit under former section 2933, subdivision (e), resulting in 91 conduct days, for a total of 182 days of presentence custody credit.  The People concede defendant is entitled to the additional credit claimed.  We agree.  Defendant was in custody for a crime committed on September 14, 2011.  The then-applicable law provided for one-for-one credit except for certain prisoners.  (Former § 2933, subd. (e) [as amended by Stats. 2010, ch. 426, § 1, eff. Sept. 28, 2010].)  No exception is applicable here.

## III

### *Restraining Order*

In sentencing defendant to county jail, the court followed the probation officer's recommendation and imposed an order, with an unlimited duration, that defendant "shall not strike, threaten, stalk, abuse, or harass via telephone, correspondence, or any other means the victim or his employees; and shall abide by any restraining orders issued against him pursuant to [s]ection 1203.097[, subdivision](a)(2)."  The probation report included the victim's statement and another letter defendant sent to Phillips after trial.  In the letter, defendant stated he would not be pestering Phillips for a job again anytime soon, apologized for his rude jokes, and asked Phillips to give his regards to a female employee.  Defendant then stated he had been "looking forward to seeing [Phillips] at the trial . . . [b]ut no matter; [*sic*] other opportunities will present themselves.  Have no

9

doubt; [*sic*] I will be a regular fixture at the races, in the future." The probation officer stated Phillips "would like to have all contact from defendant . . . cease."

Defendant contends and the People concede the order is unauthorized and must be vacated. We agree and vacate the order.

A trial court may issue a restraining order during the pendency of a criminal proceeding (§ 136.2; *People v. Ponce* (2009) 173 Cal.App.4th 378, 381-383), as part of a sentence in a stalking, domestic violence, or sex crimes against a minor case, or as a condition of probation (§§ 136.2, subd. (i), 273.5, subd. (i), 646.9, subd. (k)(1), 1201.3, subd. (a), 1203.1, subds. (i)(2), (j), 1203.097, subd. (a)(2)). Here, the trial court cited no authority for its restraining order and we cannot find any authority. Since none of the statutes cited above applies, the order is unauthorized and must be vacated. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

## IV

### *Minute Order*

Defendant contends and the People concede the sentencing minutes erroneously reflect defendant was sentenced as a two-strike offender ("[d]oubled by strike = 4 years"). The trial court imposed the midterm of three years for the extortion offense and a one-year enhancement for a prior prison term, for an aggregate term of four years. There was no strike prior alleged, admitted, nor found to be true. Accordingly, we order the trial court to delete the incorrect two-strike offender reference on the sentencing minutes.[3]

## DISPOSITION

The judgment is modified to provide 91 days of conduct credit for a total of 182 days of presentence custody credit and to vacate the restraining order. The trial court is

---

[3] The sentence is correctly reflected on the abstract of judgment.

10

directed to correct the sentencing minutes to delete reference to defendant as a two-strike offender.  As modified the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the county sheriff.

       HOCH     , J.

We concur:

    NICHOLSON    , Acting P. J.

    MURRAY     , J.

11