Filed 5/6/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOHN GALEOTTI,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 3 et al.,<br><br>     Defendants and Respondents. | A157785<br><br>(Alameda County<br>Super. Ct. No. HG18914573) |

John Galeotti appeals from a judgment of dismissal entered after the court sustained respondents' demurrer to his second amended complaint without leave to amend.  He contends his second amended complaint stated causes of action for wrongful termination in violation of public policy and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO; 18 U.S.C. § 1961 *et seq*.).  He further contends his first amended complaint stated a cause of action for interference with prospective economic advantage against the individual respondents.  We agree that his second amended complaint states causes of action and reverse the judgment.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II sections B and C.

1

In the published portion of our opinion, we conclude that a threat to terminate employment can provide a basis for an extortion claim, and, for this and other reasons, the allegations of the second amended complaint stated a cause of action for wrongful termination in violation of public policy. In the unpublished portion of our opinion, we conclude the second amended complaint stated RICO claims but the first amended complaint did not state a cause of action for interference with prospective economic advantage.

## I. FACTS AND PROCEDURAL HISTORY

In July 2018, Galeotti filed a complaint against respondent International Union of Operating Engineers Union Local # 3 (Local 3) and three of its union leaders, respondents Russell Burns, Dan Reding, and Dave Harrison (individual respondents). In essence, Galeotti alleged that the individual respondents required union employees to pay them money to keep their jobs, lied about the reason for collecting the money, and caused Local 3 to terminate Galeotti's employment when he failed to pay the full amount demanded. Galeotti purported to allege causes of action for wrongful discharge in violation of public policy and interference with prospective economic advantage. After respondents filed a demurrer to the complaint, Galeotti filed a first amended complaint.

Galeotti's first amended complaint sought damages again for wrongful discharge in violation of public policy and interference with prospective economic advantage, and added claims for a RICO violation and conspiracy to violate RICO.

Respondents filed a demurrer to the first amended complaint, contending that all the claims were preempted by the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401), the claim against individual respondents for interference with prospective economic advantage

was meritless also because the individual respondents were privileged to cause the discharge, and the RICO and conspiracy claims were not supported by the allegations of the pleading.

The court overruled the demurrer as to the claim for wrongful discharge in violation of public policy, sustained it without leave to amend as to the claim for interference with prospective economic advantage, and sustained it with leave to amend as to the RICO claims, noting that Galeotti had not alleged at least two predicate unlawful acts.

Galeotti's second amended complaint omitted the claim for prospective economic advantage but again purported to allege causes of action for termination in violation of public policy, a RICO violation, and conspiracy to commit a RICO violation. Because the second amended complaint is the operative pleading for most purposes of this appeal, we set forth its allegations in greater detail.

According to the second amended complaint, Galeotti was employed by Local 3 from September 2005 until June 2018, most recently as a non-managerial "Business Agent" assigned to assist the union by, for example, helping members obtain the benefit of their collective bargaining agreements. Burns and Reding were officers, directors or other "leaders" of the union.

In 2006, Burns and Reding formed a political organization called "The Gold Ticket" to conduct a political campaign to replace the incumbent officers and directors of Local 3 with their slate of candidates. In 2006, The Gold Ticket won a three-year term.

In 2009, 2012, 2015, and 2018, Burns and Reding (and also Harrison in 2018) allegedly caused a flyer to be distributed to union employees stating an amount employees were allegedly required to "donate" to The Gold Ticket, for the purported purpose of funding the reelection campaign of Burns, Reding,

and other members of The Gold Ticket. Galeotti alleges on information and belief, however, that the true purpose of the collection was to enrich Burns and Reding. According to Galeotti's pleading, union employees "understood that payment of the money to The Gold Ticket election campaign was required for them to keep their job."

On information and belief, Galeotti alleged that Burns and Reding ran unopposed and incurred no campaign expenses in 2009, 2012, and 2015. None of the money was returned to union employees in 2009, and only half in 2012 and 2015. In 2018, the election was contested.

"For the 2018 election campaign, [Galeotti] was told that the amount he was required to donate to The Gold Ticket was $1,000 and that refusal to do so would result in his termination. [Galeotti] is informed and believes that the $1,000 donation was required for him to retain his job as a Business Agent." Galeotti could not pay the full $1,000 but "donated $500." In June 2018, Local 3 terminated Galeotti's employment, allegedly because he "did not contribute the full $1,000 to the political campaign of The Gold Ticket."

The second amended complaint alleged that "[t]he requirement by [the individual respondents] and DOES 1 through 100, inclusive, that employees, including [Galeotti], pay money to enrich [the individual respondents] and DOES 1 through 100, inclusive, with the threat of losing their jobs, was and is the taking of employee's wages in violation of Labor Code §§ 221 and 224, extortion in violation of Penal Code § 518, and theft by deceit under California Penal Code § 484." Therefore, Galeotti asserted, his termination was in violation of public policy and respondents' acts violated RICO.

Attached to the second amended complaint was a document entitled "The 2018 Gold Ticket Election," which announced that "The Gold Ticket

4

Team is requesting your support in re-electing our team of candidates" and described the donation as "voluntary."

Respondents filed a demurrer to the second amended complaint on the ground that (1) the claim for wrongful discharge in violation of public policy was meritless because Galeotti had not alleged extortion, violation of Labor Code sections 221 or 224, or violation of Penal Code section 484; (2) the wrongful discharge claim as to individual respondents was meritless because officers of an employer cannot be liable for the employer's wrongful termination of an employee; and (3) the RICO claims were meritless because there was no extortion as a matter of law, Galeotti failed to allege theft by deceit under Penal Code section 484, and a violation of Penal Code section 484 cannot be the basis of a RICO claim.

Galeotti filed an opposition to the demurrer, contending his allegations stated a cause of action.

The court sustained the demurrer to the second amended complaint without leave to amend and dismissed the action with prejudice. This appeal followed.

## II. DISCUSSION

In our review of a dismissal entered after the sustaining of a demurrer without leave to amend, we accept as true the plaintiff's well-pleaded allegations and reasonable inferences therefrom, and we determine de novo whether those facts state a viable cause of action. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.)

As mentioned, Galeotti contends the court erred in sustaining the demurrer to his second amended complaint as to his claims for wrongful termination in violation of public policy, violation of RICO, and conspiracy to violate RICO. He further contends the court erred in sustaining the

5

demurrer to his first amended complaint as to his claim against the individual respondents for interference with prospective advantage. We examine each contention in turn.

A. <u>Wrongful Termination in Violation of Public Policy</u>

To plead a claim for wrongful termination in violation of public policy, a plaintiff must identify a fundamental public policy based on a statutory, constitutional, or regulatory provision. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 78-82 (*Green*); see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 (*Tameny*).) More precisely here, the question is whether the second amended complaint alleged facts showing that the termination of Galeotti's employment was for a reason inconsistent with a fundamental policy delineated in a statutory protection. (*Green, supra*, at pp. 71, 79.)

The second amended complaint asserted that Galeotti was fired for refusing to be a victim of respondents' purported schemes of extortion (Pen. Code, §§ 518, 519), theft by deceit (Pen. Code, § 484), and unlawful taking of wages (Labor Code, §§ 221, 224).

1. <u>Extortion</u>

Penal Code section 518, subdivision (a) defines extortion as "the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."

Galeotti did not allege that respondents used force or acted under color of official right, but that they wrongfully used "fear" -- in particular, fear of losing his job. Under Penal Code section 519, "fear" for purposes of extortion "may be induced by a *threat" to inflict unlawful injury to the person or property of the individual* or a third person, to accuse the individual or family

6

member of a crime, to expose or impute to the individual or a family member "deformity, disgrace, or crime," to expose a secret affecting any of them, or to report their immigration status or suspected immigration status. (Italics added.) A threat that does not fall within Penal Code section 519 does not give rise to extortion. (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1299; *People v. Umana* (2006) 138 Cal.App.4th 625, 639.)

Galeotti argues that he feared for his job because respondents demanded that he contribute $1,000 to The Gold Ticket campaign and threatened to fire him (and thereby "inflict unlawful injury to [his] property" under Penal Code section 519) if he refused. Two issues arise: did Galeotti adequately allege a threat *by respondents*, and was the alleged threat to terminate his employment a threat to injure his "*property*."

### a. Threat by Respondents

In his wrongful termination count, Galeotti did not unambiguously allege a threat by a particular respondent to fire him if he refused to pay the $1,000 contribution. In allegations incorporated into this count, he alleged that he "*was told* that the amount he was required to donate to The Gold Ticket was $1,000 and that refusal to do so would result in his termination," but he did not allege who told him. His reference in paragraph 46 to the "requirement by [the individual respondents] *and DOES 1 through100*, inclusive" that Galeotti and others pay money "with the threat of losing their jobs" is vague as to who made the threat and how, and is unsupported by the flyer attached to the second amended complaint, which did *not* demand payment or threaten termination but merely "request[ed]" support and described the donation as "voluntary." And while Galeotti alleged that respondents "demanded" payment and union employees "understood" they

7

would be fired if they did not pay, there is no specific allegation of anything respondents did to create that understanding.

We note, however, that in his *RICO* count Galeotti further alleged that "[d]efendants violated Penal Code §518 [extortion] each time *they . . .* threaten[ed] to take property from [Galeotti] and other Local #3 employees in the form of their employment if they did not pay Defendants money." (Italics added.) Construing Galeotti's allegations broadly, as we must, it may be inferred that respondents threatened Galeotti with termination in some communication apart from what was on the flyer. (See also *People v. Bollaert* (2016) 248 Cal.App.4th 699, 725-726 [threat may be express or implied].) While it is unknown why Galeotti did not allege who threatened him, when, and by what means – all matters within his personal knowledge – respondents do not assert that the elements of extortion must be alleged with particularity when stating a wrongful termination claim. We conclude that, for purposes of withstanding a demurrer, the allegations of the second amended complaint adequately support the inference that it was respondents who threatened Galeotti to pay or lose his job.

### b. *Threat to Injure Property*

Respondents urge (and the trial court ruled) there was no extortion as a matter of law because respondents' threat to get Galeotti fired did not threaten unlawful injury to his "property" within the meaning of Penal Code section 519. We disagree.

"Property" is not defined in Penal Code section 519. In Penal Code section 7, it is defined to include personal property, which in turn "includes" money, goods, chattels, things in actions, and evidence of debt. (Pen. Code, § 7, subd. (10), (12).) By the terms of the statute, the list is not exclusive. To the contrary, "property" in this context has been broadly construed to include

8

"*intangible* benefit[s] and prerogative[s] susceptible of possession or disposition." (*People v. Fisher* (2013) 216 Cal.App.4th 212, 217 (*Fisher*) (italics added); see, e.g., *People v. Kozlowski* (2002) 96 Cal.App.4th 853, 866 (*Kozlowski*) [right to PIN code was property that could be the subject of extortion]; *People v. Baker* (1978) 88 Cal.App.3d 115, 119 [under former Pen. Code, § 520, right to file an administrative protest was property that can be the subject of extortion]; *People v. Cadman* (1881) 57 Cal. 562, 564 [right to appeal was property within the meaning of the extortion statute].)

The foregoing cases mandated a broad interpretation of "property" in determining what might be the *subject* of extortion under Penal Code section 518 or its predecessor (i.e., what the extortionist gets from the victim). We conclude that a broad interpretation should also be given to the types of property that might be threatened to *accomplish* the extortion under Penal Code section 519 (i.e., how the extortionist convinces the victim to hand it over).

After all, it is fundamental that words in a statute must be construed in the manner that will best effectuate the statutory purpose. (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344.) The aim of Penal Code section 519 is to delineate the type of conduct that is inappropriate in attempting to convince others to turn things over in a civilized society. A broad interpretation of "property" under Penal Code section 519 advances this aim by recognizing there are many real-world vulnerabilities an extortionist might exploit to induce a victim -- including the victim's employment. Indeed, it would make no sense for Penal Code section 519 to mean that a defendant could go to jail for getting $1,000 from a victim by threatening to throw a rock through the victim's window, but not if the defendant got the $1,000 by threatening to end the victim's means of livelihood.

Respondents nonetheless contend an at-will employee like Galeotti has no property right to continued employment as a matter of law, so it is okay to threaten him with the termination of his employment to get him to pay them money. They argue that an employee who is not employed for a specified term is presumed to be an at-will employee, and at-will employees may be terminated without cause. (Lab. Code, § 2922; *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1094, overruled on another ground in *Green, supra*, 19 Cal.4th at p. 80 fn. 6.) Therefore, respondents insist, at-will employees have no property right in their jobs. (Citing *Shapiro v. Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 483 (*Shapiro*), disapproved on another ground in *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 688, 700 fn. 42; *Southern California Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 730 fn.11 (*Southern California Rapid Transit*).) But neither *Shapiro* nor *Southern California Rapid Transit* said anything about the type of property that can be the subject of a threat for purposes of extortion.

Respondents focus on *Shapiro,* which, as relevant here, ruled that an at-will employee, discharged without cause by his employer, could not maintain an action for wrongful termination in violation of public policy because he *failed to allege* he was terminated in contravention of public policy (such as retaliation for asserting his statutory rights or refusing to perform an illegal act) or that the employer violated a statute in dismissing him. (*Shapiro, supra*, 152 Cal.App.3d at p. 477.) The court also rejected Shapiro's argument that the termination of his employment without cause under Labor Code section 2922 was an unconstitutional denial of his property interest in continuing employment, noting that the plaintiff had *not "identified* any California statute or rule to support his claim that he is entitled to continued employment." (*Id*. at p. 483, italics added.)

10

*Shapiro* did not consider whether a threat to fire an employee unless he paid $1,000 could constitute a threat to injure property under Penal Code section 519, or whether it could provide the basis for extortion, or whether it could underpin a claim for wrongful termination in violation of public policy. *Shapiro* merely decided that the employee in *that* case had not identified any right to continued employment where the employee had not *alleged* any substantial public policy violated by his termination. (*Shapiro, supra*, 152 Cal.App.3d at pp. 477, 483.) Here, Galeotti made such an allegation based on his claim of a scheme of extortion.[1]

Of greater relevance to the matter at hand is *Fisher, supra,* 216 Cal.App.4th 212. There, the court considered whether a defendant's threat of vandalism to induce an employer to hire him constituted a demand for "property" within the meaning of the extortion statutes. (*Id*. at p. 216.) Observing that "property" for purposes of the extortion statute should be broadly interpreted, the court upheld the conviction, explaining that a threat to vandalize the employer's business unless hired was a demand for "part of the [employer's] intangible benefit and prerogative of being able to control whom to employ in one's business." (*Id*. at p. 219.) In reaching this conclusion, *Fisher* turned to two New York decisions, including *People ex rel. Short v. Warden of City Prison* (N.Y.App.Div. 1911) 145 A.D. 861 (*Short*),

---

[1] *Southern California Rapid Transit* is also distinguishable. There, the court stated in a footnote, without analysis and on a matter not placed at issue by the parties, that the defendants' termination of plaintiffs' employment did not impact a property interest for purposes of a civil rights claim under 42 U.S.C. § 1983, because at-will employees have no property right to continued employment. (30 Cal.App.4th at p. 730 fn. 11.) The court did not consider what might constitute "property" for purposes of extortion under Penal Code section 519. A case is not authority as to an issue it did not consider. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524 fn. 2.)

11

which held that a threat to get the plaintiff fired from his job constituted a threat to injure the plaintiff's property for purposes of extortion. (*Fisher*, at p. 218; see also *State v. Smith* (1954) 273 S.W.2d 143, 147 [loss of employment is an injury to a person's property]; *Sekhar v. United States* (2013) 570 U.S. 729, 735 fn. 3 (*Sekhar*) [acknowledging *Short* without disapproval].)

Although respondents (and the trial court) have noted that *Fisher* cited *Short* to support a broad interpretation of property rights with respect to employers rather than employees, *Fisher* made no such distinction. Its salient point is that "property" should be broadly construed to effectuate the purposes of the extortion statutes -- a principle embraced by California courts for years. (See, e.g., *Kozlowski, supra,* 96 Cal.App.4th at pp. 865-866 ["property" as used in California's extortion statute should be broadly interpreted].) While *Fisher* broadly interpreted "property" to determine that a right to hire could be the *subject* of an extortion, it relied on a decision (*Short*) that broadly construed "property" to conclude that a threat to have someone fired could be an unlawful *means* of extortion -- the exact situation here.

Respondents further argue that the term "property" denotes an exclusive right to use or possess something or exclusive ownership, so the employer's property right to fire an at-will employee precludes an employee from having any property right that can be the subject of a threat under Penal Code section 519. The argument is untenable. As *Shapiro* acknowledged and *Tameny* decreed, an employer's authority to discharge an at-will employee may be limited by statute or public policy. (*Shapiro, supra,* 152 Cal.App.3d at p. 475; *Tameny, supra*, 27 Cal.3d at p. 172.) An employer's right as to whom to hire (*Fisher*) cannot preclude an employee's right to be

12

free from termination for a purpose inconsistent with substantial public policies underlying statutory provisions (*Tameny*).[2]

Lastly, we note that respondents' theory misses the mark for another reason. It is true that a defendant's threat to do something that the defendant has a legal right to do is generally not a threat to commit an *unlawful* injury, as required for extortion. (*People v. Kaufman* (2017) 17 Cal.App.5th 370, 394 [defendant's threat to go to police and report a theft, if the money he believed he was owed was not paid, is not extortionate]; *People v. Schmitz* (1908) 7 Cal.App. 330, 370 [threatening to go before the board and protest the issuance of a liquor license if debts were not repaid was not extortionate, because people may lawfully protest the issuance of a liquor license]; see CALCRIM No. 1830.) But here, respondents have not demonstrated that they had a legal right to threaten to fire Galeotti *for not paying them money he did not owe*. Quite obviously, threatening an unlawful termination is a threat of unlawful injury.

---

[2]    In a case decided under the "anti-SLAPP" statute (Code. Civ. Proc., § 425.16), the court in *Cross v. Cooper* (2011) 197 Cal.App.4th 357 stated that a threat to remove the plaintiff's "for sale" sign and tell prospective buyers bad things about the plaintiff's real property, to make it impossible to sell, were not threats to injure property. (*Id*. at p. 387.) *Cross* did not cite legal authority for this proposition; moreover, it did not address the question posed here: whether "property" under Penal Code section 519 may include intangible rights, specifically a right not to be unlawfully terminated from employment. *Cross* is therefore inapposite. We also note that, while we conclude that "property" in Penal Code section 519 must be broadly construed, we leave open the possibility that the meaning of "property" in Penal Code section 518 may not always be coextensive with the meaning of "property" in Penal Code section 519; both terms should be interpreted to effectuate the purpose of their respective statutes. (See *Seckhar, supra,* 570 U.S. at p. 735 fn. 3 [distinguishing "property" that is the subject of extortion and injury to "property" as the means of extortion].)

Put another way, extortion may be based on threats that are not unlawful in themselves but become unlawful when coupled with a demand for money. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326-327.) Thus, even if, in isolation, it would have been lawful to threaten Galeotti with the termination of his at-will employment, it was unlawful for respondents to use the threat as a hammer to induce him to pay them $1,000.

In sum, Galeotti's allegations support an inference that respondents engaged in a scheme to obtain a $1,000 contribution from Galeotti by threatening to inflict unlawful injury to his property – namely, the termination of his employment. Because Galeotti further alleged that Local 3 fired him for not succumbing to this extortion attempt, he has adequately alleged that his employment was terminated in violation of the public policy underlying the extortion statutes. (Pen. Code, §§ 518, 519; see Pen. Code, § 523 [written attempt to extort punishable even if no property obtained]; § 524 [attempted extortion punishable].)

### 2. Theft by Deceit

Penal Code section 484, subdivision (a) provides that a person is guilty of theft if the person "knowingly and designedly" defrauds another person of money or personal property. (See *People v. Hunter* (1957) 147 Cal.App.2d 472, 475 [theft includes "obtaining property under false pretense"].) Theft by false pretense arises under Penal Code section 484 if the victim justifiably relied on a misrepresentation by the perpetrator and suffered damage as a result. (See *People v. Wooten* (1996) 44 Cal.App.4th 1834, 1842-1843.)

Here, Galeotti contends the individual respondents misrepresented that the contributions would be used for their reelection campaigns, when in reality they intended to get the funds for their personal use.

As a preliminary matter, we agree with respondents (and the trial court) that the second amended complaint did not state an actionable theft by false pretenses. First, Galeotti failed to allege facts from which it may be reasonably inferred that he – or any other union employee – *relied* on respondents' purported misrepresentation in giving money to fund their campaigns. He did not allege that union employees made donations for this purpose. To the contrary, he alleged that union employees "understood that payment . . . was required for them to keep their job[s]," suggesting payment was motivated by a desire to stay employed, not a desire to fund any campaign.[3] Second, Galeotti did not allege that any reliance on respondents' purported misrepresentation *caused him damage*. Although he alleged that respondents did not believe there would be a contested election in 2018 when they solicited the contribution, he also alleged that the 2018 election turned out to be contested after all. This gives rise to an inference that the 2018 funds may have been used to cover campaign expenses, and Galeotti nowhere alleged that they were not.

The question here, however, is not whether respondents could be liable (or guilty) under Penal Code section 484. The question is whether firing Galeotti was contrary to the policy *underlying* Penal Code section 484 –to protect the public good from persons who would make false statements to obtain money from others. (*Green, supra,* 19 Cal.4th at pp. 71, 86-87 [*Tameny* claim must be " 'tethered' " to public policy " 'delineated' " in a statute, etc., and such a claim was stated where the defendant's conduct

---

[3] For this reason, Galleoti's theft-by-deceit theory, as alleged, appears in conflict with his extortion theory. He attempts to remedy the matter by representing in his appellate reply brief that he paid the money to keep his job *and* to support the reelection campaign. But that is not alleged in the second amended complaint.

15

allegedly violated the policy evidenced in a federal regulation, whether or not the defendant could be proven liable for violating the regulation].) As alleged in the second amended complaint, union leaders attempted to induce Galeotti to give them money under false pretenses, and Local 3 fired him because he did not pay the full amount. In so doing, Local 3 terminated his employment not for refusing to make a contribution to the election campaign, but for refusing to pay what Local 3 knew was secretly going to enrich the individual respondents personally. The termination was therefore contrary to the policy delineated in Penal Code section 484, and on this basis Galeotti stated a cause of action for wrongful termination of his employment in violation of public policy.

3. Labor Code Sections 221 and 224

Labor Code section 221 bars employers from obtaining any portion of the wages paid to an employee. Labor Code section 224 generally requires written authorization for deductions from employees' wages. These sections protect employees against actions taken by their employers – in this case Local 3.

Galeotti does not allege that Local 3 obtained any of his wages. Nor does he allege that Local 3 deducted from his salary the $500 he contributed to The Gold Ticket (or would have deducted the $1,000 if he had paid in full). To the contrary, Galeotti alleges that he made contributions to the individual respondents' campaign funds -- such as by a check "payable to Gold Ticket 2018" -- and those payments enriched individual respondents. While Galeotti argues that the individual respondents are effectively one and the same as Local 3, and Local 3 ratified the individual respondents' decision to fire him, the point is that the money paid to the campaign fund was not allegedly received by the union, but by the individual respondents for their *personal*

16

use. Galeotti thus fails to allege a violation of Labor Code sections 221 or 224.

Moreover, because the 2018 contribution was not designed to be a payment to Local 3 or a deduction from wages, attempting to induce Galeotti to make the full contribution did not implicate the public policy underlying Labor Code sections 221 and 224, so firing him for failing to make the full contribution was not contrary to the policy delineated in those statutes. Galeotti failed to state a cause of action under this theory.

### 4. Conclusion as to the Wrongful Termination Claim

The trial court erred in sustaining respondents' demurrer; the first cause of action for wrongful termination in violation of public policy is reinstated as to Local 3 to the extent it is premised on the public policy underlying Penal Code sections 518 et seq. and Penal Code section 484.[4]

### B. RICO Claims

The second and third counts in Galeotti's second amended complaint alleged that respondents violated RICO by acquiring and maintaining an interest in, or control of, an enterprise (18 U.S.C. § 1962, subd. (b)) and that they conspired to violate RICO (18 U.S.C. § 1962, subd. (d)).

Section 1962, subdivision (b) makes it unlawful for a person "to acquire or maintain, directly or indirectly, any interest in or control of any enterprise" through a pattern of racketeering activity. To state a cause of

---

[4] A wrongful termination claim cannot be maintained against individuals. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900.) Indeed, Galeotti asserts he is not making a *Tameny* claim against the individual respondents . The court therefore did not err in sustaining the demurrer as to them. The matter may proceed against Local 3, who allegedly terminated Galeotti due to his refusal to go along fully with the individual respondents' scheme, which was allegedly pursued within the course and scope of their employment and was authorized, consented to, and ratified by Local 3.

action, Galeotti had to allege, among other things, a pattern of racketeering activity based on the commission of at least two predicate acts. (*H.J., Inc. v. Northwestern Bell Telephone Co.* (1989) 492 U.S. 229.)[5]

Section 1962, subdivision (d) makes it unlawful for persons to conspire to violate section 1962, subdivisions (a), (b), or (c). To state a cause of action, Galeotti had to allege that the purported conspirators intended to further a scheme that, if completed, would satisfy the elements of a civil RICO claim. (*Salinas v. United States* (1997) 522 U.S. 52, 65.)

As to both RICO counts, therefore, the question for this appeal is whether Galeotti alleged two or more predicate acts reflecting a pattern of racketeering activity. Section 1961, subdivision (1) defines "racketeering activity" to include enumerated state and federal offenses, including any act or threat involving extortion chargeable under state law and (as in California) punishable by imprisonment for more than one year.

In his second amended complaint, Galeotti alleged that the individual respondents conducted a scheme in 2009, 2012, 2015 and 2018 to extort money from union employees in violation of Penal Code section 518, and to

---

[5]     Other elements of 18 U.S.C. § 1962, subdivision (b) have not been addressed by the trial court's order or the parties in this appeal. For example, section 1962, subdivision (b) precludes the acquisition or maintenance of control over an enterprise *through* racketeering activity. The second cause of action of the second amended complaint alleges that the individual respondents extorted employees to enrich themselves, but not specifically to gain an interest in or control of any identified enterprise; what that "enterprise" is remains unclear. Also unclear is whether Galeotti suffered injury independent of the predicate acts and, if not, whether he has standing to pursue a RICO claim under 18 U.S.C. § 1962, subdivision (b). (E.g., *Advocacy Organization for Patients and Providers v. Auto Club Ins. Association* (6th Cir. 1999) 176 F.3d 315, 329.) Since these issues have not been presented to us, we do not decide them.

obtain money through deceit under Penal Code section 484 by forcing union employees to make donations to The Gold Ticket political campaign.

The allegations of theft under Penal Code section 484 are insufficient. As discussed *ante*, Galeotti did not state a cause of action for theft by false pretense. Further, Galeotti has not demonstrated that a violation of Penal Code section 484 can constitute a predicate act. (*United States v. Genao* (2d Cir. 2003) 343 F.3d 578, 584 [theft is not a state law offense that constitutes a RICO predicate act]; *Annulli v. Panikkar* (3rd Cir. 1999) 200 F.3d 189, 192 [theft by deception, breach of contract, and intentional interference with contract are not predicate acts].)

The allegations of extortion in Galeotti's second amended complaint, however, are sufficient. Galeotti alleged that in 2018 respondents threatened that he would be fired unless he made a $1,000 contribution to The Gold Ticket. Galeotti did not pay $1,000, so to that extent their attempted extortion failed. But Galeotti did pay $500, so to that extent it succeeded. Moreover, it can be inferred from the allegations of the second amended complaint that other employees made campaign donations under threat of termination. Accordingly, Galeotti alleged two or more predicate acts of extortion.

Based on the issues presented to us and the trial court, the court erred in sustaining the demurrer to the second and third causes of action of the second amended complaint.

C. Interference with Prospective Economic Advantage

Galeotti's first amended complaint included a claim for interference with prospective economic advantage against respondents Burns, Reding, and Harrison, alleging that they initiated efforts to have Local 3 terminate his employment after he failed to contribute $1,000 to The Gold Ticket, thus

19

interfering with his prospective economic benefits in being employed by Local 3.

As our Supreme Court held long ago, it is "well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24 (*Shoemaker*).)  This is because the acts of the agents and employees, who stand in a confidential relation to the corporation, are privileged.  (*Gruenberg v. Aetna Insurance Company* (1973) 9 Cal.3d 566, 570, 576.)  On this basis, the trial court sustained  respondents' demurrer to this cause of action without leave to amend.

In his opening brief in this appeal, Galleoti contends the acts of the individual respondents in causing the termination of his employment with Local 3 were not privileged, and accordingly they could be liable.  For this proposition, he relies on *Olivet v. Frischling* (1980) 104 Cal.App.3d 831 (*Olivet*).

*Olivet* explained that a manager or agent would be privileged to counsel the employer's breach of contract with a third party if done to protect the employer's interest, but the manager or agent would not be privileged to induce the breach of contract to further their own economic advantage at the employer's expense.  (*Olivet, supra*, 104 Cal.App.3d at pp. 840-841.)

Galeotti did not allege facts showing that his situation fell within the exception described in *Olivet*.  He alleged that the individual respondents convinced Local 3 to terminate Galeotti's employment contract because Galeotti had not provided them with a benefit (the full amount of the $1,000 contribution) – in other words, Galeotti was fired out of retaliation.  But *Olivet* involved an entirely different scenario, in which board members acted to induce the breach of contract with a third party so they could thereafter

obtain the benefits that the third party had enjoyed. There was no allegation in Galeotti's first amended complaint that the individual respondents caused Local 3 to terminate Galeotti so they would receive the benefits he enjoyed from his job, or that they acted for their own economic advantage at the expense of Local 3. Indeed, it is alleged they acted within the course and scope of their employment and with Local 3's consent, authorization and ratification.

In his appellate reply brief, Galeotti insists that, as in *Olivet*, he alleged that the individual respondents personally benefited from firing him, because his termination would convince other employees to make their contributions.

He does not, however, identify where in his first amended complaint he made this allegation. And even if he had, it would not have given rise to an inference that they caused Galeotti's termination so they could obtain a benefit within the meaning of *Olivet*, especially in light of the explicit allegations that they acted with the authority and consent of Local 13. (See *Halvorsen v. Aramark Uniform Services, Inc*. (1998) 65 Cal.App.4th 1383, 1395 [manager's privilege is absolute as to any lawsuit by a terminated at-will employee, and the manager's state of mind is irrelevant]; *McCabe v. General Foods Corp*. (9th Cir. 1987) 811 F.2d 1336, 1339 [no cause of action against managers for inducing discharge of at-will employee, despite allegation they acted in part by ill will]; cf. *Huynh v. Vu* (2003) 111 Cal.App.4th 1183, 1188 [privilege applies where predominant motive is to benefit principal].)

In any event, Galeotti's reliance on *Olivet* is unavailing. *Olivet* held that, although parties to a contract cannot be liable for inducing a breach of their own contract, a hospital board of directors that purported to be the same legal entity as the hospital (and thus a party to the contract), *could* be

21

liable for *conspiring* to interfere with a contract between the hospital and a leasing company. (*Olivet, supra,* 104 Cal.App.3d at p. 838.) Here, Galeotti likewise argues that the individual respondents were one and the same as Local 3. However, our Supreme Court has disapproved *Olivet* to the extent it held that a party to a contract can be held liable based on a conspiracy to interfere with its own contract. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521 fn. 10.)

Galeotti fails to show that the court erred in sustaining the demurrer to his first amended complaint.

## III. <u>DISPOSITION</u>

The judgment, and the order sustaining the demurrer to the second amended complaint, are reversed as set forth herein. Appellant shall recover his costs on appeal from respondents.

22

_____

NEEDHAM, J.

We concur.

_____

JONES,  P.J.

_____

BURNS, J.

(A157785)

Superior Court of Alameda County, No. HG18914573, Michael Markman, Judge.

Law Office of Kevin C. Bedolla and Kevin Bedolla; Law offices of Brian Kreger and Brian S. Kreger for Plaintiff and Appellant.

Schwartz, Steinsapir, Dohrmann & Sommers, Michael Four and Henry M. Willis for the Defendants and Respondents.